DAVID BAKER *v.* CALVIN RUSHFORD AND ELLA RUSHFORD..

January Term, 1917.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed September 4, 1917.

*Equity—Executory Contracts—Relation of Parties—Application of Proceeds of Insurance Policy.*

A contract wherein the vendee agrees to purchase land and personal property from the vendor, by yearly installments, and the vendor agrees to give a deed when a certain sum has been paid, is in law an executory contract, and except for his interest in the property as security, the vendor holds the title in trust for the vendee, whom equity regards as owner.

Plaintiff was in possession of a farm and personal property under a written contract of sale with defendants wherein it was agreed that the purchase price of $3,000 was to be paid in yearly installments and when the first $1,500, which was secured by a mortgage upon the personal property, should be paid, defendants were to give plaintiff a warranty deed, and take back a mortgage to secure the balance due. The house, which was insured in accordance with the agreement in favor of defendants, was burned without fault of either party, at a time when no payments were in arrears, and the insurance money was received by defendants. *Held*, defendants could not be compelled to make immediate application of the insurance money upon the payments to become due, discharge the chattel mortgage and convey the premises, but were entitled to hold the money for an application which would complete the payment of the debt.

*Thorp* v. *Croto*, 79 Vt. 390, distinguished.

APPEAL IN CHANCERY. Heard on bill and cross-bill, answers, and facts found by the chancellor, in vacation after the June Term, 1916, Franklin County, *Slack*, Chancellor. Decree for plaintiff, and dismissing defendants' cross-bill. Defendants appealed. The opinion states the case.

*Gaylord F. Ladd* for plaintiff.

The relation of the parties under the contract was that of mortgagor and mortgagees. *Van Dyke & Drew* v. *Cole,* 81 Vt. 379; *Vermont Marble Co.* v. *Mead et al.,* 85 Vt. 20; Pom. Eq. Jur. Sec. 368; *Lewis* v. *Hawkins,* 23 Wall. 119, 127; *Church* v. *Smith,* 39 Wis. 492; *Walker* v. *Cosgrain,* 101 Mich. 608; *McGregor* v. *Putney,* 75 N. H. 113, 71 Atl. 226.

The insurance money must be applied upon the debt as it falls due. *Thorp* v. *Croto,* 79 Vt. 390, 65 Atl. 562.

*P. H. Coleman* and *A. B. Rowley* for defendants.

The provision in the contract as to insurance was not intended to provide a fund from which, in the event of a loss by fire, the debt might be paid, but was intended as security for the payment of the debt. The insurance money represented and took the place of the house that was burned and defendants had the same interest in the money that they had in the house. *Bank* v. *Bedell,* 74 Vt. 108; *Powers* v. *Insurance Co.,* 69 Vt. 494; *Brooks* v. *Hubbard,* 73 Vt. 122; *Gordon* v. *Sav. Bank,* 115 Mass. 591; *Naquin* v. *Texas, etc., Ass'n,* 58 L. R. A. 711; *Williams* v. *Lilley,* 37 L. R. A. 150; *Fergus* v. *Wilmarth,* 117 Ill. 542.

MUNSON, C. J. The defendants are the vendors, and the plaintiff the assignee of the vendee, of a farm and personal property, the sale of which was evidenced by a written contract dated July 10, 1911. The price was $3,000; $200 of which was to be paid on or before July 10, 1912, and $200 on or before the tenth of July in each year thereafter until all was paid. At the date of the contract the vendee, Mary Martin, gave the defendant Calvin a chattel mortgage of all the personal property described in the contract, to secure the payment of the first $1,500 of the purchase price. When this payment was completed, and all conditions performed, the vendors were to give the vendee a warranty deed of the land and premises, and receive a mortgage deed of the same to secure the balance of the annual payments and the other conditions of the contract. By the terms of the contract the vendee was to pay all taxes afterwards assessed on the property, and keep the buildings and contents insured for $1,400 in a specified company for the benefit of the vendors. The vendee and her husband took possession of the property soon after the execution of the contract, and remained in posses-

sion until October 14, 1912, on which day they assigned their interest in the contract to the plaintiff, who thereupon took possession. The dwelling house on the premises was destroyed by fire February 21, 1915, without the fault of either party. It was insured in the required company for $1,000,. by a policy procured by the plaintiff and made payable to the plaintiff and the defendant Calvin; and on the 20th of March the loss was adjusted at $990, and covered by a check made payable to both the insured. The plaintiff indorsed the check and delivered it to Calvin, who deposited it in a bank in his name as trustee, where it has since remained. There was nothing due under the contract at the time of the fire, and $95 had been paid on the installment next to become due; and all tax assessments had been paid. It would cost between $1,500 and $1,800 to replace the building. Each party has refused to take the money and rebuild. The value of the land without the building is $800. On the 25th of March, 1915, the plaintiff gave the defendants a written direction to make an immediate application of the insurance money on the payments to become due under the contract. The bill prays to have the money so applied, and the defendants ordered to make conveyance of the premises and discharge the chattel mortgage. The defendants have filed a cross-bill praying that the plaintiff be foreclosed of his equity in the premises. The decree below is for the plaintiff.

It was held in *Thorp* v. *Croto*, 79 Vt. 390, 65 Atl. 562, 10 L. R. A. (N. S.) 1166, 118 Am. St. Rep. 961, 9 Ann. Cas. 58, on the facts there presented, that the mortgagee should hold the insurance money and apply it to extinguish the mortgage debt, including interest, as fast as the same became due. The plaintiff claims that this decision is conclusive in his favor. The defendant does not question the correctness of the decision, but contends that the two cases are clearly distinguishable.

The relations of these parties at the time of the fire were those of vendor and vendee, under a contract of sale which provided for a subsequent transfer of the title on the making of certain payments, and a contemporaneous mortgage of the premises to the vendor to secure the balance of the consideration. But the rights of the parties are the same as they would have been if. the fire had occurred after the conveyance,—other conditions remaining the same. This was in law an executory contract, which left the legal estate in the vendor; but, except for his interest in

32

the property as security, the vendor held the title in trust for the vendee, whom equity regards as the owner. But after the transfers, and before condition broken, the vendee would be the holder of the legal title and estate, and the vendor would have his security in the form of a mortgage. So the case is not distinguished from *Thorp* v. *Croto* by the fact that the latter was a suit between mortgagor and mortgagee.

But there are obvious differences between the case at bar and *Thorp* v. *Croto*. The facts presented in the Thorp case disclose nothing as to the adequacy or inadequacy of the security, and no question as to the sufficiency of the security seems to have been raised. Nothing is said in either the majority or the minority opinion regarding the question of adequacy as a matter bearing upon the decision rendered. Here, the defendants refer to the facts reported as showing an inadequacy of security, and claim that this inadequacy distinguishes the case from the Thorp case.

The defendants say further of the Thorp case that "both the mortgagor and mortgagee were willing that the money should be applied as payment, and the Court treated it as the parties did." But the dissent was put upon the ground that the mortgagee was entitled to hold the insurance money in place of the property destroyed; so this aspect of the subject must have entered into the Court's consideration of the case. The cases are alike in that no part of the debt was due when the insurance money was received, but they differ as to the terms of payment. In the Thorp case there was no provision enabling the mortgagor to require an acceptance of payment in advance of its becoming due. Here, the installments of the purchase money were all payable on or before the dates specified, so that the entire indebtedness was payable at once at the option of the vendee; and the vendors were directed "to immediately apply said sum * * * upon the payments to become due under said contract."

There is another difference to be considered in connection with the vendee's option. In the Thorp case there was no intermediate condition on the fulfillment of which the debtor was entitled to a change in the form and substance of the security. Under this contract, the payment of $1,500 of the purchase price would entitle the vendee to a discharge of the mortgage on the chattels, and to a conveyance of the title to the realty upon his giving a mortgage of the same to secure the balance of the debt.

So this provision for an exercise of the vendee's option divides the principal into two parts, as to which the rights of the vendor touching the security are not indentical.

In the absence of an agreement for a release of some part of the security on the payment of a portion of the debt secured, the creditor is entitled to retain the entire security until the debt is fully paid. If the insurance money stands in place of the property destroyed it goes with the land, and retains in equity the quality of indivisibility; and the creditor is entitled to retain the entire security notwithstanding the change in form of a part of it. This would require that the insurance money be held for an application which would complete the payment of the debt.

The question then arises whether the vendee's right to a transfer of the title and discharge of the chattel mortgage on the payment of a sum less than the entire debt, in connection with his privilege of paying a part or all of the notes at any time before their maturity, entitles him to use the insurance money to complete such partial payment. We think not. A part of the notes could not be paid by a tender of funds which the creditor was entitled to hold as security for the payment of all the notes.

This view accords with the terms and nature of the provision regarding insurance. The vendee is to keep the buildings insured for the benefit of the vendor. The insurance is for the benefit of both parties, but is primarily for the benefit of the vendor as security holder of the property insured, and inures to the benefit of the vendee through the reduction of his debt. The vendee cannot require an application of it which would give him the primary benefit and leave the vendor inadequately secured. The application must be such as will preserve the equities of the vendor or mortgagee in the given case.

Our disposition of the question presented here is not inconsistent with the decision in *Thorp* v. *Croto* as limited by the facts of that case; and it accords with the Court's view, elsewhere expressed, that the proceeds of a policy of insurance on mortgaged property are to be substituted for the property destroyed. *Powers* v. *N. E. Fire Ins. Co.*, 69 Vt. 494, 38 Atl. 148.

*Decree reversed and cause remanded with direction that the complaint be dismissed.*