F. O. DUTTON *v.* CHARLES DAVIS ET AL.

May Term, 1931.

Present:   POWERS, C. J., SLACK, MOULTON, and THOMPSON, JJ.

Opinion filed October 6, 1931.

*H. A. Bailey* for the defendants and appellants.

*Novak, Bloomer & Spero* for the plaintiff.

Powers, C. J.   The Whalleys owned certain real estate in the towns of Charlotte and Ferrisburgh which they conveyed to Davis and wife by a warranty deed dated February 9, 1924. Previously, on October 12, 1922, the Whalleys had sold to M. E. Hewitt all the standing timber on said real estate.   This sale was evidenced by a writing signed by the Whalleys but not sealed, witnessed, acknowledged, or recorded.   It gave Hewitt two years from its date in which to cut and remove the timber. On November 20, 1922, by a similar writing Hewitt transferred the timber to the plaintiff.   The latter entered upon the land in the year 1923 and cut a part of the timber, and the defendants knew of his cutting there as late as January, 1924. Some of the logs so cut by the plaintiff were on the land when the Davis deed was delivered.   Some time about January 23, 1924, Mrs. Whalley stopped the cutting, and that work was suspended until some time in May of that year.   The defendants sued the plaintiff to the March Term of Chittenden county court and recovered a judgment for damages for such cutting as was done after they obtained their deed.   By a special verdict, the jury in that case found that Davis knew, when he took his deed, about the contract for the sale of the timber to Hewitt. After judgment was rendered in that suit, this bill in chancery was brought to restrain further proceedings thereunder and for general relief.   The decree below was for the plaintiff, and the defendants appealed.

It is quite apparent that the writing of October 12, 1922, was wholly insufficient to convey the title to the standing timber.   It operated only as a license to enter to cut and re-

move the same, and the title passed to Hewitt or his assignee as fast as timber was cut, but no faster. *Cady* v. *Sanford,* 53 Vt. 632, 636; *Ross* v. *Hamilton,* 95 Vt. 234, 236, 113 Atl. 781. Such is the result at law. But in equity, the parties stand in an entirely different situation. Equity regards that as done which ought to be done. It is said that this is equity's favorite maxim. *Coman* v. *Lakey,* 80 N. Y. 345, 350; *Miller* v. *Cramer,* 48 S. C. 282, 26 S. E. 657; *Johnson* v. *Brill* (Mo. Sup.), 295 S. W. 558, 562.

However this may be, it is certain that it is one of the foundation stones upon which the whole structure of chancery jurisdiction is erected. It pervades the entire field of that jurisdiction, and, according to Mr. Pomeroy, its significance is nowhere more clearly disclosed than in its treatment of executory contracts for the sale of land or an interest therein. At law, the relations thereunder of vendor and purchaser are wholly personal, and give rise to actions for damages, only. But in equity, the contract is regarded as executed, and as operating to transfer the estate from vendor to vendee, just according to the intention of the parties. The vendee is treated as the owner to the extent required by the contract, though the legal title remains in the vendor. The latter is treated as one holding the title in trust and for security, only. This is so firmly established that an extensive collection of authorities is not required. The following may be referred to. 1 Pom. Eq. § 368; 2 R. C. L. 464, and cases; *Rienzo* v. *Cohen,* 112 Conn. 427, 152 Atl. 394, 396; *Caltrider* v. *Caples,* 160 Md. 392, 153 Atl. 445, 447.

Our own court has recognized and applied this doctrine in similar cases. *Wilkins* v. *Somerville,* 80 Vt. 48, 53, 66 Atl. 893, 11 L. R. A. (N. S.) 1183, 130 A. S. R. 906; *Baker* v. *Rushford,* 91 Vt. 495, 497, 101 Atl. 769. Not only does the rule apply between the original parties, but every subsequent purchaser who has notice is subject to it. *Gilchrist* v. *Van Dyke,* 63 Vt. 75, 78, 21 Atl. 1099; *Wilkins* v. *Somerville, supra;* 27 R. C. L. 466.

Under the maxim aforesaid, equity will deal generously in the correction of mistakes. In relation to conveyances of real estate or attempts to that end, it makes no difference to a court of equity whether the mistake or omission is in regard to a statutory or common-law requisite; it makes no difference whether the parties failed to execute such an instrument as they intended, or mistook the operative effect of the one they did

execute. The court of chancery will carry into effect their intention. *Beardsley* v. *Knight*, 10 Vt. 185, 190, 33 A. D. 193; *Abbott* v. *Flint's Admr.*, 78 Vt. 274, 277, 62 Atl. 721.

■ ■ It is urged that the plaintiff's rights were cut off by a revocation of the license to enter referred to above. We cannot agree. In the first place, the agreed statement of facts does not say that Mrs. Whalley revoked or attempted to revoke that license; and that she did is not a necessary inference from what is said therein. For aught that appears, the interview between Thompson and the plaintiff was a friendly one resulting only in a temporary cessation of the latter's activities. And then, too, being now in equity, any attempted revocation of the license, acted upon by the plaintiff as this one was, would amount to a fraud upon him, and would avail the defendants nothing. *Wheaton* v. *Cutler*, 84 Vt. 476, 484, 79 Atl. 1091.

*Decree affirmed, and cause remanded for such further proceedings as may be required, if any, to establish the equitable rights of the parties.*