## West-Nesbitt, Inc. v. Ralston Purina Company

[266 A.2d 469]

No. 66-69

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed April 7, 1970

On Motion for Reargument June 2, 1970

*John A. Burgess,* Montpelier, for Plaintiff.

*Davis, Martin & Free,* Barre, for Defendant.

**Holden, C.J.** This action is in equity and was instituted by the plaintiff to obtain declaratory relief and the dissolution of an attachment levied by the defendant on a farm formerly owned by Glendon and Shirley Randall in the town of Marsh-

field, Vermont. The chancellor's findings and declaratory decree are based on an agreed statement of facts which was enlarged by oral and documentary evidence.

The core of the controversy is a stipulation entered by the plaintiff and the Randalls on May 7, 1968 to accomplish the settlement and discontinuance of an action at law brought by the plaintiff in the Washington County Court against Glendon and Shirley Randall. According to the terms of settlement, the Randalls agreed to convey to the plaintiff their home farm and all of their goods, chattels, farm machinery and other personal property except for five items specifically excluded.

The plaintiff on its part agreed to pay the following obligations for the benefit of the Randalls:

1. Any and all indebtedness for which security by way of a real estate mortgage or chattel mortgage of said Glendon Randall and Shirley Randall has been given to the Northfield Savings Bank.

2. An amount not to exceed Twelve thousand, three hundred and fifty dollars ($12,350.00) which said amount is secured by some form of chattel security on a Universal Milking system, Allis-Chalmers tractor, and a rotary cythe (sic).

3. An amount not to exceed Five hundred dollars ($500.00) to Mark Abbott of Cabot.

4. An amount not (to) exceed One thousand dollars ($1,000.00) to the Mary Fletcher Hospital of Burlington.

5. An amount not to exceed Ninety dollars ($90.00) to the Heaton Hospital of Montpelier, Vermont.

6. An amount not to exceed Twelve hundred dollars ($1,200.00) to Attorney M. Martin Leinwhol (sic) of Barre, Vermont.

It was further stipulated that title should pass to the plaintiff "upon payment or an assumption of indebtedness of each of the above items."

The Randalls agreed to transfer title by sufficient instruments of conveyance free and clear of all encumbrances except those for fulfilling settlement agreement. Should the Randalls fail to perform, it was understood that "the Washington County Court, may enter judgment for the face amount of the notes which constitute the gravamen of the causes of action

now before said Court between the parties together with interest and reasonable attorney's fees to be assessed by the Court."

The terms of settlement further provided that it was understood time is the essence of the agreement and the parties contemplate full compliance with its terms on or before May 10, 1968. Upon performance of the terms the action of the plaintiff West-Nesbitt against the Randalls in Washington County Court shall be entered "Settled and Discontinued." It was further stipulated that any interest refunds or rebates after the payment of the debts specified should be paid forthwith to the Randalls.

The stipulation for settlement was filed for record with the town clerk of Marshfield at 7:00 P.M. on the day of its execution, May 7, 1968. On May 9, 1968 the defendant Ralston Purina Company filed in the Marshfield Land Records its lien of attachment in an action against the Randalls, purporting to attach all the lands of the Randalls in that town. At the time of recording the attachment lien, the terms of the settlement agreement between the plaintiff and the Randalls had not been complied with by either party.

From the plaintiff's ledger, which was exhibited to the court, it appears that the plaintiff had paid out $19,111.74 to Randall creditors at the time of the defendant's attachment. After the defendant's attachment, during the period from May 13, 1968 through December 31, 1968, the plaintiff paid out additional sums in the total amount of $11,807.72.

The complaint alleges, and the defendant agrees, that the plaintiff has since undertaken to sell the Randall farm to Arthur Williams of Fayston. It was further stipulated that the attachment obstructs this sale.

On the strength of these facts the chancellor declared the plaintiff West-Nesbitt, Inc., holds equitable title to the Randall farm and decreed such title to be free and clear of the defendant's attachment. The defendant appeals.

The plaintiff's claim to title, superior to the lien of the defendant's attachment, is based on the theory that its stipulation and agreement with the Randalls constitutes a contract for the sale of real property. It stands on the proposition that, in equity, its agreement with the Randalls transferred the full

equitable estate to the plaintiff vendee, leaving no property in the vendor which could be reached by subsequent attachment.

■ In the usual contract for the purchase of an interest in land which is entirely performed by the vendee and there remains only the giving of the deed of conveyance by the vendor, equity regards the total beneficial interest as vested in the purchaser. And subsequent purchasers with notice of the agreement take subject to the first vendee's prior equity. *Dutton* v. *Davis*, 103 Vt. 450, 452, 156 A. 531.

■ The ascendancy of the equitable estate over the legal title is based on the concept that equity regards as done that which ought to be done. But as Chief Justice Powers carefully noted—"the contract is regarded as executed, and as operating to transfer the estate from vendor to vendee, just according to the intention of the parties. The vendee is treated as the owner to the extent required by the contract, though the legal title remains in the vendor." *Dutton* v. *Davis, supra,* 103 Vt. at 452. However, the court is not at liberty to apply the concept to excuse performance or override the express stipulations in the contract required of the party who seeks to invoke the maxim. *Modern Woodmen of America* v. *Headle,* 88 Vt. 37, 53, 90 A. 893. Thus a stipulated act cannot be deemed to have been performed before the time of performance specified in the contract. And equity will not regard an act as presently done where the parties contemplate and agree that the act is to be completed in the future. *Anderson* v. *Yaworski,* 120 Conn. 390, 181 A. 205, 101 A.L.R. 1232, 1235; 27 Am.Jur.2d § 126.

This was well explained by the Lord Chancellor in *Rose* v. *Watson* (1864) 10 H.L.C. 672, 11 Eng. Rep. 1187, 1190:

> When the owner of an estate contracts with a purchaser for the immediate sale of it, the ownership of the estate is, in equity, transferred by that contract. Where the contract undoubtedly is an executory contract, in this sense, namely, that the ownership of the estate is transferred, subject to the payment of the purchase-money, every portion of the purchase-money paid in pursuance of that contract is a part performance and execution of the contract,

and, to the extent of the purchase-money so paid, does, in equity, finally transfer to the purchaser the ownership of a corresponding portion of the estate.

■ Thus, an equitable interest accrues in the vendee to the extent of his payments. And when the contract price is finally paid, the full equitable estate vests in the purchaser and the seller retains the naked legal estate in trust for him. *Jennison* v. *Leonard,* 21 Wall. (U.S.) 302, 309; 22 L.Ed. 539; *Larson* v. *Metcalf,* 201 Iowa 1208, 45 A.L.R. 344, 349; see also 55 Am.Jur., Vendor and Purchaser § 356.

The findings are silent on the extent of the Randall's interest in the farm at the time of the defendant's attachment. The total value of the farm was not disclosed and we are not told whether the Randall obligations satisfied after May 9 were secured by the farm property or not.

■ In any event, it can be inferred that the Randalls held something more than bare legal title for at the time of the defendant's attachment intervened, the plaintiff's undertaking in the stipulation for settlement was only partly performed. The true nature and extent of the interest retained by the Randalls, as vendors, on May 9, 1968 is an essential fact. The Randall's equity in the farm should have been measured by the chancellor as the difference between the total value of the farm and the amount of payments advanced, or satisfaction given by the plaintiff up to the time of the attachment. See *Standard Register Co.* v. *Greenberg,* 120 Vt. 112, 118, 132 A.2d 174, and *Robinson* v. *St. Johnsbury and Lake Champlain R.R. Co.,* 80 Vt. 129, 139, 66 A. 814. The determination should be reported in the findings for the defendant's lien attached to whatever interest remained in the Randalls on May 9. And their interest at that time is held to answer to the validity of the defendant's suit against them. *Coggshall* v. *Marine Bank Co.,* 63 Ohio St. 88, 57 N.E. 1086, 1088; 6 Am.Jur.2d, Attachment and Garnishment § 141.

To be sure, if the defendant's action against Randall should fail, the attachment would fall with it. But the lien could not be extinguished by subsequent payments made by the plaintiff to other Randall creditors expended after notice of the defendant's prior attachment.

: ·It follows that the declaration of the decree that the equitable title of the plaintiff is free and clear of any and all liens of the defendant is not supported by the findings. The second paragraph of the decree was in error. .

. · *Paragraph 2 of the decree is reversed and the cause remanded for further proceedings and the entry of a new decree in accordance with the views herein expressed.* .

### On Motion For Reargument .

**Holden, C.J.** After the opinion was announced, the plaintiff made a timely request for reargument. We granted further hearing on the strength of the plaintiff's contention that our failure to treat the plaintiff's equitable estate as total, and fully transferred at the time of the defendant's attachment on May 9, 1968, could lead to an inequitable result on remand. Whether this consequence will follow cannot be ascertained from the meager facts developed in the record before us.

The plaintiff's claim in this regard is based entirely on the principle that "equity regards as done, that which ought to be done." The plaintiff calls upon us to reconsider the opinion as first announced, on the ground that it misconstrues the settled law of this state relating to executory contracts for the sale of land, as expressed in *Dutton* v. *Davis*, 103 Vt. 450, 156 A. 531.

The facts, such as they are reported, do not give the doctrine expressed in the *Dutton* case complete control over the present appeal. Enough appears to indicate that at the time the defendant levied its attachment the plaintiff's equitable interest, under its undertaking with the Randalls, had not entirely preempted the debtor's legal estate in the farm property. The defendant's attachment reached whatever interest the debtors had in the property on May 9. And as Mr. Pomeroy has indicated, it is of little consequence whether the grantor's estate be designated as legal or equitable. As long as the plaintiff's bargain remained unfulfilled, the grantor had an interest in the property that could be reached as an attachable asset, subject, of course, to all valid and outstanding prior liens in force at the time of the defendant's attachment. 2 Pomeroy's Equity Jurisprudence, §§ 685, 724a.

The maxim upon which the plaintiff relies has special significance in the ordinary contract for the sale of land. It is

important in adjusting the usual relations between vendor and purchaser. It was so stated in *Dutton* v. *Davis, supra,* 103 Vt. 450, 452.

. The executory contract, which the plaintiff claims gives it the entire equitable estate, is not the ordinary purchase and sale agreement. It represents the method resorted to, by the parties, for the settlement of a law suit. The relationship between West-Nesbitt and the Randalls was not the usual situation of buyer and seller. The status of creditor and debtor permeates the contract and is significant in resolving the prevailing equities.

The stipulation for settlement of the plaintiff's action against the Randalls is in the nature of a special assignment for the benefit of some,—but not all,—of the Randall creditors. We were mindful of this when the case was first presented. It was not dealt with in the first opinion because the point was not raised in written or oral argument.

However, the plaintiff's brief, in support of reargument, contends there is no equity in the defendant as a *bona fide* purchaser for value. In regard to the equities to be protected, we are urged to consider the interest of those creditors of Randall, specified in the agreement, whom the plaintiff agreed to pay. And it is suggested that these beneficiaries could well have been lulled into inaction in reliance on the plaintiff's undertaking to discharge their accounts.

. This line of reasoning is resisted by an opposing precept of the chancery courts. It is made clear that the plaintiff, the defendant, and other creditors of the Randalls, specified in the settlement, were looking to the farm property to satisfy their claims.

"Whenever several persons are all entitled to participate in a common fund, or are all creditors of a common debtor, equity will award a distribution of the fund, or a satisfaction of the claims, in accordance with the maxim, Equality is equity; in other words, if the fund is not sufficient to discharge all claims upon it in full, or if the debtor is insolvent, equity will incline to regard all the demands as standing upon an equal footing, and will decree a *pro rata* distribution or payment." 2 Pomeroy's Equity Jurisprudence, § 407, (Fifth Edition).

This principle of equity has been indoctrinated into the law of this jurisdiction by our statute governing assignments for

the benefit of creditors. 9 V.S.A. § 2151. And a special assignment for the purpose of giving a preference to certain creditors of the assignor, over others, has been held inoperative against a subsequent attachment and levy. *Passumpsic Bank v. Strong,* 42 Vt. 295, 300.

■ Without any thought to abandon the doctrine expressed in *Dutton* v. *Davis,* we must recognize that the principle it expresses does not apply to every executory contract. Nor does it favor every person without regard to his situation. It aids only him "who holds the equitable right to have the act performed, as against the one upon whom the duty of such performance has devolved." 2 Pomeroy's Equity Jurisprudence, § 365. And if performance is at variance with the policy of the statutory law, the statute must prevail. *In re Taggart's Estate,* 190 Cal. 493, 213 P. 504, 27 A.L.R. 1360, 1363. Equity will not look upon an impending transaction as done if the law says it ought not to be done.

It is suggested in the plaintiff's brief that there may have been prior liens against the Randall farm at the time the defendant's attachment was recorded, which might accrue to the plaintiff's advantage by way of subrogation. The facts presented do not permit a decision on this question. Furthermore, we were advised by counsel at the time of the last hearing that the plaintiff, after receiving a deed of conveyance from the Randalls, has since reconveyed the property. In view of this, we will vacate the order entered at the opening of the April Term and enter a new order to permit further hearing in the light of the situation which now prevails.

*Decree reversed and cause remanded for such further proceedings as may be required to establish the rights of the parties in accord with the views herein expressed.*