## The Farmers' Mutual Fire Insurance Company v. William Marshall.

*Principal and agent.   Insurance contracts.   Promissory notes. Jurisdiction.*

One P., assuming to act as the agent of the plaintiffs, forwarded to them an application for insurance, which he obtained from the defendant, which the plaintiffs approved of, and upon which they issued a policy. About this time, or soon thereafter, the plaintiffs took from P. a bond, of a date prior to that of the application, reciting that he was appointed, and binding him to the faithful performance of the duties of an agent, &c. *Held*, that these acts of the plaintiffs amounted to a ratification of P.'s agency in obtaining the application.

Extent of the authority of a general agent for procuring applications for an insurance company.

In contracts of insurance, parol representations or concealments *affecting the risk* will in many cases avoid a policy, when they would not have that effect, or perhaps be permitted to be shown in reference to a contract of a different character. But in regard to the other incidents the same rules of construction and evidence apply as to other contracts. If a promissory note is given for the premium, it cannot be shown by parol that it was represented or stipulated that a payment of it, or of a portion of it, would not be required.

A promise in writing, in the general form of a promissory note, by which a person, for value received in a policy issued to him by an insurance company, promises to pay such company a specified sum, in such proportions and at such times as their directors should require, is a promissory note, in the sense in which that term is used in the statute in limiting the jurisdiction of justices; and it is a note for the full amount for which it is given, and if that amount exceeds one hundred dollars the county court has jurisdiction, though the assessments which the directors have made upon it are less than one hundred dollars.

Assumpsit upon a promissory note signed by the defendant, dated March 17th, 1851, numbered 229, and reading as follows:

"For value received in policy of the same number and date herewith, issued by the Farmers' Mutual Fire Insurance Company, I promise to pay the said company, or their treasurer for the time being, the sum of one hundred and eighty-nine dollars, in such portions and at such times as the directors of said company may, agreeably to their act of incorporation, require."

The declaration alleged certain assessments to have been made on said note at certain specified times, but all the assessments so alleged amounted to less than one hundred dollars, but the *ad*

*damnum* in the writ was set at two hundred dollars. The defendant, at the term of the county court to which the suit was returnable, moved to dismiss for want of original jurisdiction in said court. This motion was overruled, to which the defendant excepted. The defendant then plead the general issue, upon which there was a trial by jury at the March Term, 1856,—POLAND, J., presiding.

The plaintiffs read in evidence an application for insurance by the defendant, dated March 11, 1851, and the approval of said application by the directors of the company, on the 17th of March, 1851; and showed that a policy of insurance was duly issued upon that application. They also read the premium note described in the declaration, and the charter and by-laws of the plaintiffs. The plaintiffs also proved that the following assessments had been duly made on said note by the directors of said company: in 1851, six dollars and sixty-two cents; 1852, twenty-eight dollars and thirty-five cents; 1853, eight dollars and three cents; 1854, ten dollars and forty cents; 1855, thirteen dollars and ninety-eight cents; and it was conceded that the defendant had been duly notified of all the assessments, and that the same were all wholly unpaid.

The defendant then introduced evidence tending to prove that at the date of his application he was called upon by one Willis Palmer, who represented himself to be an agent of the plaintiffs, and who proposed to the defendant to get his buildings insured in their company; that the defendant was reluctant, and that Palmer, to induce him to become insured, told him that the company had a great sum of money in the treasury, enough to pay all the losses for five years, and that if he would pay five dollars that would be all he would have to pay; and that there would be a dividend among those insured at the end of five years; that he was finally induced by Palmer's representations to become insured, and that Palmer thereupon made out his application and premium note, which the defendant signed, and that witnesses were then called and it was stated before them that the agreement was that the defendant was to pay no more than that sum for five years. The defendant testified that he was deceived by these representations, and that he should not have made said application and note but for said representations. All the above evidence was objected to by the plain-

tiffs, but the same was received subject to all legal exceptions. The defendant's application and premium note were forwarded by Palmer to the plaintiffs, and on the 17th of March, 1851, the directors of the company approved the defendant's application, and issued a policy thereon. It was not claimed that any of the directors or officers of the company had, at this time, any knowledge in relation to any representations or agreements made by Palmer with the defendant, except what appeared upon the application and premium note.

It was conceded by the plaintiffs that the Merchants' and Mechanics' Class, in which the defendant was insured, had not any funds on hand when the defendant was insured, but that the expenses and losses in that class were intended to be met by annual assessments on the premium notes of all who were insured in it. It was conceded that the plaintiffs had not, at the time the defendant made his application, appointed Palmer an agent, and that the first knowledge they had of Palmer was when they received the defendant's application, and some others which he had taken from other persons. Palmer executed a bond to the company as agent, dated the 25th of February, 1851, the condition of which was as follows : " Whereas the said Palmer is appointed an agent to transact business for the Farmers' Mutual Fire Insurance Company, and for those who are insured or make application to be insured by said company ; now if the above bound Willis Palmer shall well and truly discharge the duties of said agency, and pay over all moneys collected by him for said company, monthly, and also refund to all applicants all moneys received of them on application, where not accepted by the company ; then in that case this obligation to be void ;" but at what time the same was forwarded to or received by the company did not appear. There was a meeting of the directors on the 17th of March, 1851, and another on the 7th of April, 1851, when Palmer's bond was approved and he was appointed an agent. On the 17th day of March, when the applications of the defendant and others were approved, the secretary of the company commenced an account on their books with Palmer, charging him with such portions of the moneys he had received as belonged to the company. When the defendant's policy was sent to him the name of Palmer was written upon the back of the same as agent by the

secretary of the company, and this appeared to have been the prac-tice of the company when an application was forwarded by some person other than the applicant, whether such person had been appointed an agent by the company or not.

It appeared that after the defendant received notice of the first assessment on his premium note, in 1851, he called on the plain-tiff's treasurer, and informed him of his agreement with Palmer that he was to pay only five dollars, and declared he would pay no more, and proposed if they would give up his note to surrender his policy and lose the five dollars he had paid.

Upon the foregoing evidence, the court ruled that the plaintiffs were entitled to recover, and directed a verdict to be returned for them, to which the defendant excepted.

*Merrill & Willard* for the defendant.

1. An adoption by plaintiffs of the act of Palmer in one part, was an adoption of the whole of his acts, and the case stands pre-cisely as though he had been formally appointed agent prior to March 11th. *Wilson* v. *Poulter,* 2 Str. 859; *Capel* v. *Thornton,* 3 Car. & P. 352; *Hovel* v. *Pack,* 7 East. 164; Dunlap's Paley on Agency, 174; *Fitzsimmons* v. *Joslin,* 21 Vt. 144.

The plaintiffs now insist upon the contract, although they were informed by the defendant of the facts in 1851. They are there-fore bound by it; and if they take the benefit of his act, it must be *cum onere. Benedict* v. *Smith,* 10 Paige 127; Dunlap's Paley 31, and cases there cited; *Perkins* v. *Washington Ins. Co.,* 4 Cow. 645; Phillips on Ins. sec. 1868.

2. The false representations made by Palmer as to the resources of the company, being material, and in fact the inducements to the defendant's entering into the contract, avoid the contract. If a false representation had been made by defendant upon a point equally material, it would undoubtedly be a case within the decisions allow-ing insurance companies to avoid the contract. But the insurer is under a corresponding obligation, *mutatis mutandis.* Phillips on Ins. sec. 572; *Duffel* v. *Wilson,* 1 Camp. 401; Phillips on Ins. secs. 529, 530, 533, 537, 512, 543, 545, 553, 562, 1880; Ellis on Ins. 157 n. and cases there cited; *Wilson* v. *Genessee M. Ins. Co.,* Livingston's Law Mag. July 1854, 504; 2 Dow 263.

3. The case should be dismissed for want of jurisdiction.

Less than one hundred dollars was demanded. The *ad damnum* cannot confer a jurisdiction which the declaration takes away.

The act of incorporation gives the option to plaintiffs to sue for the assessments or for the whole note. *Thompson* v. *Conolly*, 6 Vt. 91; *Putney* v. *Bellows*, 8 Vt. 272; *Hosford* v. *Foot*, 3 Vt. 391; *Bishop* v. *Warner*, 22 Vt. 591; *Washington Co. Mut. Ins. Co.* v. *Miller et al*, 26 Vt. 77.

*A. Spalding and Peck & Colby* for the plaintiffs.

The opinion of the court was delivered by

REDFIELD, CH. J. I. Some question is made whether Palmer is to be regarded as the agent of the plaintiffs in effecting the insurance. It is certain the plaintiffs were aware that the insurance was effected through Palmer at the time they ratified the policy, and also that he claimed to act as their agent, as he was then in treaty for such agency which was soon after conferred by the company, and a bond taken from him, dated February 25, 1851, (the defendant's policy bearing date March 17, 1851,) by which it is recited, that Palmer "*is* appointed agent for the company and for those who apply for insurance," and binding him with surety in the penal sum of five hundred dollars to the faithful performance of the duty of such agency. We think, therefore, there can be little doubt, that, as the plaintiffs knew of the act done on their behalf, and took security for the faithfulness of such agent, from a date prior to the act, they must be regarded as intending to ratify his agency in the transaction.

To what extent his representations, in effecting insurances, will bind the company, is a question of more difficulty. For although he is undoubtedly a general agent for transacting a particular department of the business of the company, in a limited district, still his power to bind the company is certainly not unlimited. The authority of a general agent is restricted to the range of his employment and the acts and representations which a prudent and ordinarily sagacious and experienced person might expect him to do, or to be authorized to make, on behalf of his principal. The representation claimed in the present case was a remarkable one, and

one not very well calculated to impose upon men much experienced in the manner of transacting the business of such companies. But so large a proportion of the people, especially in the remote rural districts of the state, are almost wholly ignorant upon these points, and are, in consequence, so readily made the victims of interested solicitors on behalf of the numerous insurance companies, who are found, I believe, always ready and urgent to insure one against all the calamities of life, that courts ought not, perhaps, to require any very rigid rules of circumspection in these matters from wholly inexperienced persons. It seems to us altogether a question of fact, whether a given representation was really calculated to impose upon a careful and prudent man. And in a case where that question should become important it would be proper, when raised by counsel, to submit it to the jury.

II. But it seems to us that the representation of the agent in this case or stipulation, if we so consider it, is not of the class which will avoid the policy, if it would not equally avoid a written contract upon any other subject. It is undoubtedly true that, in regard to *representations* and *concealments* affecting materially the risk, both in marine and fire insurance, policies may be avoided, when in other contracts such representations certainly would not have that effect. The law of insurance has been regarded as specially requiring the utmost good faith. Hence all representations inserted in the policy, or contained in the application, and expressly referred to in the policy, as part of it, are denominated warranties, and must be strictly complied with, or the policy is avoided. And in regard to representations and concealments which are material, and directly affect the risk, whether on the part of the assured or the insurer, unless the representations are substantially true, the policy is void, although such representations are merely by parol, and made at and before the time of effecting the insurance, and not inserted in the policy; they being regarded as substantial fraud in regard to a policy of insurance, while in regard to ordinary contracts similar representations would perhaps be held as within the fair range of allowable embellishment and chaffer in the matter of bargain, or, if in the nature of express warranties, would be held to have been waived, by not being inserted in the written contract. Ellis on Ins., 81, 82, 84, 85, 100,

Shaw's Ed., and the very elaborate note of the Am. Cases, by Mr. Shaw, where most of the cases are collected and satisfactorily digested; Phillips on Ins., secs. 846, 865, 524, 765. And policies of insurance often contain a clause, that if the assured shall make any false claim for loss under the policy, it shall avoid it. Ellis on Ins., 52, *et seq.* and notes.

III. But in regard to the other incidents of a contract of insurance, we are not aware that it is subject to any different rules of construction from those which apply to similar contracts upon other subjects. The effective portion of the representation here, so far as the defendant was concerned, or may be supposed to have been deceived and injured by it, was in regard to the conditions of the contract, or the premium, which it would be necessary for him to pay upon the policy. Palmer assured him that five dollars would be all that it would cost him, and he would probably obtain a dividend out of the surplus funds of the company at the end of the five years. It is true that he connected with this, as a sort of out-work or barricade, an assurance that the company had a large fund on hand, but the real matter affecting defendant's interest was, that five dollars would be the extent of his premium, and this he paid down.

Now in regard to the premium for the insurance, the contract is specific. A note of one hundred and eighty-nine dollars is given, and the defendant expressly stipulates to pay such portion of it as the directors may, from time to time, assess. He became a member of the company, and is affected by a knowledge of the charter and by-laws of the company, a copy of which is attached to his policy.

He therefore expressly bound himself to pay every assessment within thirty days after notice, or else to pay the whole note at the election of the company. This is altogether at variance with the stipulation of the agent upon which the defendant claims to have made the contract, and which cannot be received to contradict it any more than could evidence that the note was agreed to be but five dollars, or that it was agreed the policy should contain the stipulation made by the agent. The writing excludes all parol declarations and stipulations made at the time, or before, except representations affecting the risk.

If the defendant could have any redress, it would be by reforming the contract in a court of equity, probably. For this is no ,more a fraud to be redressed in defense of this suit than if one should offer to show that the payee of any note promised never to collect it, and that the party relied solely upon that assurance.

It is not essentially different from some of the cases in our reports, where parol defenses to notes have been excluded; *Saunders* v. *Howe*, 1 D. Ch. 263, where the note was promised to be surrendered upon proof that the maker did not originate certain slanderous reports of the payee; *Bradley* v. *Anderson*, 5 Vt. 152, where it is held that the maker of a promissory note·shall not be allowed to give evidence of what is in fact a mere mistake in reducing the contract to writing, under the pretence that it amounts to fraud; *Bradley* v. *Bentley*; 8 Vt. 243, where it is held that it is not competent to defeat a recovery upon a promissory note, given for the price of a cooking stove, by proving, by oral evidence, that it was agreed by the parties to the note, at the time of executing it, that if the maker elected, at the end of the year, to return the stove and pay six dollars for the use of it, the note should be surrendered; *Isaacs* v. *Elkins*, 11 Vt. 679, where the note was given for the price of a horse, and it was offered to prove in defense, that it was orally agreed, at the time of executing the note, (which was made payable absolutely in ten days,) that, if the horse did not answer the expectation of the party, it might be returned, and the note surrendered.

In all these cases, and many others which might be referred to, it operated a wrong upon the party to enforce the written contract, but the defense was held inadmissible. That rule is now too firmly established, in this state, to be departed from. And we cannot perceive why, in regard to a representation of this character, a contract of insurance should not exclude oral declarations of the party in contradiction of the terms of the written contract, as much as any other contract. It would seem the rule ought here to be enforced with more than ordinary strictness. And, where the party has really been made the victim of a sharper, and induced to sign a contract which he never understandingly made, he is entitled to the same remedy as in other similar cases in a court of equity.

IV. In regard to the jurisdiction of the county court, if the case stood upon the statute of 1821, by which it was enacted that whenever it appeared, by the note and endorsements thereon, or by the declaration, that the sum due was less than one hundred dollars, justice courts shall have jurisdiction, I should certainly find difficulty in sustaining the jurisdiction of the county court upon this declaration, which counts expressly upon the assessments, and nothing else, which fall clearly below one hundred dollars.

But the present statute is differently expressed. It is that " the matter in demand, in an action on note, shall be considered the amount of the note, deducting endorsements." And having held, in the case of the *Washington County Mutual Insurance Co.* v. *Miller*, 26 Vt. 77, that such a premium note is a note within this statute, and was to be regarded as a note for the full amount, so far as the exclusive jurisdiction of justices is concerned, we do not see very well how we can turn the party over to a justice's jurisdiction in this case, without holding that the premium note is not a note within the statute, for the full sum expressed, which would be wholly in conflict with the former view taken. For if this is a note for the full sum expressed, there being no indorsements, by the express terms of the statute as it now stands, the county court have jurisdiction. And when it appears that the party had his election to declare for the whole note, by the very terms of the contract, we think the motion to dismiss was correctly overruled. Judgment affirmed.