W. O. JOHNSON *v.* HARDWARE MUTUAL CASUALTY CO.

February Term, 1936.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON and SHERBURNE, JJ.

Opinion filed May 5, 1936.

270

*Herbert G. Barber, Raymond Trainor*, and *Edwin W. Hadley*, of Boston, Mass., for the defendant.

*Wilson & Keyser* for the plaintiff.

THOMPSON, J. The defendant, hereinafter called the Company, issued to the plaintiff, the owner of a Studebaker sedan automobile, a policy of insurance in which it agreed, in substance, to indemnify him against loss or expense arising from claims upon him by reason of legal liability on account of bodily injuries or death accidentally suffered by any person or persons due to the ownership, maintenance, or use of said Studebaker automobile, and against loss or expense arising from claims upon him on account of damage or destruction of property alleged to have been caused by an accident due to the ownership, maintenance, or use of said Studebaker automobile.

The Company also agreed:

> "To defend in the name and on behalf of the assured any suit seeking damages for such bodily injuries or property damage even if such suit is groundless, false or fraudulent; to pay, irrespective of the limit of liability stated in the policy, all costs taxed against the assured in any such defended suit, all premiums on attachment and/or appeal bonds not in excess of the limits set forth in this policy, required in any such proceedings; all expenses incurred by the Company, all interests accruing after entry of judgment until the Company has paid, tendered or deposited in Court such part of such judgment as does not exceed the limit of the Company's liability thereon, also any expense incurred by the assured for such immediate surgical relief as shall be imperative at the time of bodily injury."

Condition L of the policy provides that no action or suit on the policy against the Company shall be sustainable until the

amount of the damages for which the assured is liable is determined, either by a final judgment against the assured or by agreement between the assured and the plaintiff with the written consent of the Company.

Condition S provides that the policy shall constitute the entire contract between the Company and the assured.

Condition P of the policy provides:

> "The assured, when requested by the Company, shall aid in effecting settlements, securing evidence, the attendance of witnesses, and in prosecuting appeals. The assured shall not voluntarily assume any liability, settle any claim, or incur any expense other than for immediate surgical relief, except at his own cost, or interfere in any negotiation or legal procedure without the consent of the Company previously given in writing."

By the provisions of the policy, the liability of the Company as to the claim of any one person for personal injuries, irrespective of how many persons might be injured in the accident, was limited to $5,000. If more than one person were injured in a single accident, the liability of the Company was limited to a total of $10,000, single claims within such group of claims being limited to $5,000. The liability of the Company as to property damage caused in any one accident was limited to $5,000.

On December 8, 1930, while the policy was in force, the plaintiff was driving his automobile in Wilder, Vt. His automobile collided with an automobile truck whereby the truck went down an embankment. The truck, which was owned by a Mrs. Palmer, was damaged. Four boys who were passengers in the truck received minor injuries. William Rule, the driver of the truck, who worked for Mrs. Palmer, received serious injuries. Rule brought suit against the plaintiff to recover damages for the injuries he received. The *ad damnum* in the writ was $20,000.

The case was tried by jury at the June Term, 1931, of Windsor County court. Before, and during the course of, the trial, there were negotiations between counsel for the parties and Paul J. McDonald who, at that time, was the New England claim manager and claims attorney of the Company. Various offers of settlement of decreasing amounts were made by counsel for

Rule which the Company declined. The representatives of the Company made counter-offers in lesser amounts which were declined. On July 10, during the trial, counsel for Rule, who was also counsel for the four boys who were in the truck at the time of the accident, and for Mrs. Palmer, the owner of the truck, offered to accept $6,000 for the claims of Rule and the minor claims of Kenneth Rule and Mrs. Palmer. Soon after, he offered to accept $5,500 for those claims, which was within the limits of the policy. In the forenoon of July 13, the last offer was withdrawn before any reply to the same had been received. The jury returned a verdict of $14,000 for the plaintiff. The case was taken to this Court on exceptions, and the judgment was affirmed. *Rule* v. *Johnson*, 104 Vt. 486, 162 Atl. 383. It is undisputed that in that case there were items of contradictory evidence and contradictory claims as to the existence of legal liability.

The Company settled and paid the personal injury claims of the four boys who were in the truck, and the property damage claim of Mrs. Palmer, who owned the truck, out of its own funds. It is not disputed that the Company performed its contractual duty under the policy as to the claim of William Rule by paying $5,000 plus costs and interest, being a total of $5,815.70. After the judgment in the case of *Rule* v. *Johnson* was affirmed by this Court, the plaintiff in this case made a settlement with William Rule by paying him a sum which, after payments by the Company under the policy, amounted to over $6,000. It is stipulated that the amount plaintiff Johnson has paid over and above all payments by the Company is, with all interest accrued, $6,600.

The plaintiff has brought this action against the defendant for its negligence in failing to settle the claim of William Rule against him, and seeks to recover the sum of $6,600, which is the amount over and above what the defendant paid that he had to pay to settle the judgment against him. At the close of the plaintiff's evidence, the defendant moved for a directed verdict. The motion was denied and the defendant was allowed an exception. It is not necessary to consider the grounds of that motion as the defendant waived its exception by proceeding with the trial and introducing evidence. At the close of all the evidence, the defendant moved for a directed verdict. The motion was denied, and the defendant was allowed an exception.

There are six grounds stated in the motion, but we consider only the first three grounds. They are:

> "1. As a matter of law, the defendant owed no duty of care to the plaintiff for which an action in tort for negligence will lie in this State."
>
> "2. On all the evidence the defendant was not guilty of any actionable negligence as a matter of law."
>
> "3. In a policy insuring against liability for causing personal injuries, the clauses giving the insurer the right to defend or settle an action thereunder do not constitute the assumption of a legal duty of care upon which an action in tort for negligence against the insurer may lie or be predicated."

The plaintiff does not claim that in the case of *Rule* v. *Johnson* the defendant was negligent in the selection of counsel, in the investigation and preparation of the case, or in the handling of the trial itself. His only claim of negligence is that the defendant negligently, during the trial of that case, failed to settle the case when a settlement for a sum within the limits of the liability of the defendant under the policy was possible.

The question whether the insurer under a policy like the one in this case can be held for negligence for not settling a case for a sum within the limits of its liability under the policy is one of first impression in this jurisdiction. The authorities are not in harmony on this question.

There are authorities which hold that in cases of indemnity contract, like the one in this case, when liability against the insured arises, the indemnity company is in duty bound to exercise the care of a prudent person to protect the interest of the assured up to the amount of its liability under the policy, for the reason that it has contracted to act as his agent and assumes full and absolute control over the litigation arising out of the accident covered by the policy; that the provision of the policy giving the indemnity company absolute and complete control of the litigation, as a matter of law, carries with it a corresponding duty and obligation, on the part of the indemnity company, to exercise that degree of care that a prudent person would exercise under

the same or similar circumstances, and the failure to exercise such care and prudence is negligence.

These cases hold that where, under the provisions of the policy, the indemnity company has the absolute power to settle a case covered by the policy, and the assured has no right to settle the case except at his own expense, if the indemnity company refuses or fails to settle a case for a sum within the limits of its liability under the policy, when such a settlement is possible, and the assured is thereby compelled to pay a sum in excess of the liability of the indemnity company to discharge the judgment against him, he can recover from the indemnity company the excess amount he was compelled to pay in an action of tort for negligence if a prudent person would have settled the case in the same or similar circumstances.

The leading case supporting this rule is *Douglas* v. *U. S. Fid. & Guar. Co.*, 81 N. H. 371, 127 Atl. 708, 37 A. L. R. 1477. Other cases supporting that rule are: *Cavanaugh Bros.* v. *Gen. Acc. Fire & Life Assur. Corp.*, 79 N. H. 186, 106 Atl. 604; *Attleboro Mfg. Co.* v. *Frankfort Marine, Acc. & Plate Glass Ins. Co.* (C. C. A.), 171 Fed. 495, subsequent appeal (C. C. A.), 240 Fed. 573; *G. A. Stowers Furniture Co.* v. *American Indemnity Co.* (Texas Com. App.), 15 S. W. (2d) 544; *Anderson* v. *Southern Surety Co.*, 107 Kan. 375, 191 Pac. 583, 21 A. L. R. 761; *Tiger River Pine Co.* v. *Maryland Casualty Co.*, 163 S. C. 229, 161 S. E. 491.

There are other authorities, and we think the weight of authority, which hold that where the terms of the contract of indemnity are clear and unambiguous, the rights of the parties are to be determined by the agreement into which they entered, and that the insurer cannot be held liable for refusing to settle a case before or during trial for an amount within the limits of its liability under the policy, although such refusal may result in a judgment against the assured for an amount in excess of the liability of the insurer, in the absence of fraud or bad faith. There is no allegation in this case that there was fraud or bad faith on the part of the defendant when it refused or failed to settle the case of *Rule* v. *Johnson*, so those questions are not before us.

In the policy in this case, and in most of the policies of indemnity insurance against loss occasioned by an automobile accident, the insurer agrees to defend in the name and on behalf

of the assured any suit covered by the policy even if such suit is groundless, false, or fraudulent; and to pay all costs taxed against the assured in any such defended suit.

In most, if not in all, of the policies insuring against loss occasioned by an automobile accident, there is a provision similar to Condition P in the policy in this case, which provides that the assured shall not voluntarily assume any liability, settle any claim, or incur any expense other than for immediate surgical relief, except at his own cost, or interfere in any negotiation or legal procedure without the consent of the insurer previously given in writing.

While the general rule is that when the terms of a contract of insurance are ambiguous or fairly susceptible of two different constructions, that construction will be adopted that is most favorable to the insured, the rule is equally well settled that contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken in their plain, ordinary, and popular sense. *Farmers' Mutual Fire Ins. Co.* v. *Marshall*, 29 Vt. 23; *Furry's Admr.* v. *General Accident Ins. Co.*, 80 Vt. 526, 529, 68 Atl. 655, 15 L. R. A. (N. S.) 206, 130 A. S. R. 1012, 13 Ann. Cas. 515; *Imperial Fire Ins. Co.* v. *Coos County*, 151 U. S. 452, 462, 14 Sup. Ct. 379, 38 L. ed. 231; *Drilling* v. *New York Life Ins. Co.*, 234 N. Y. 234, 137 N. E. 314.

It is generally held that these clear and unambiguous terms of the policy, that the insurer shall defend any suit covered by the policy in the name of and on behalf of the assured, and that the assured shall not voluntarily assume any liability, settle any claim, or incur any expense other than for immediate surgical relief, except at his own cost, or interfere in any negotiation or legal procedure without the consent of the insurer previously given in writing, give the insurer the exclusive control of any action brought against the assured, and the option to settle, if it sees fit to do so, or to try the action, as it prefers.

In *Auerbach* v. *Maryland Casualty Co.*, 236 N. Y. 247, 140 N. E. 577, 578, 28 A. L. R. 1294, the defendant had issued to the plaintiffs a policy similar to the one in this case, the liability of the insurer being limited to $5,000. The plaintiffs were involved in an automobile accident, and two actions were brought against

them. The two actions could have been settled before trial for $6,500, but the insurance company did not settle because the assured would not pay $3,000 on the settlement, and it insisted upon a trial. There was a trial which resulted in verdicts and judgments amounting to $20,500 being returned against the assured. The insurance company paid the full amount of its liability, $5,000, and the plaintiffs paid the balance of the judgments $15,500, and then instituted an action against the insurance company to recover $14,000, the difference between what it had to pay and what it would have paid if the settlement had been made. The court, when holding that the complaint did not state a cause of action, and that the insurance company, in refusing to settle the actions, did what it had the legal right to do under the terms of the policy, said:

> "The terms here used are clear and unambiguous. The intent of the parties, if the language used be given a reasonable construction, cannot be misunderstood. There is nothing in the policy by which the insurance company obligated itself to settle, if an opportunity presented itself. It was given the option to settle, if it saw fit to do so, or to try the action, as it preferred. It, however, was under no legal obligation, either express or implied, to compromise or settle the claims prior to the trial. The plaintiffs, when they accepted the policy, did so with full knowledge of the fact, if an action were brought, that they surrendered to the insurance company absolute, full and complete control of it, including the settlement or trial."

*Best Building Company* v. *Employers' Liability Assur. Corp.*, 247 N. Y. 451, 160 N. E. 911, 912, 71 A. L. R. 1464, was an appeal from a judgment of the Appellate Division of the Supreme Court (220 App. Div. 816, 222 N. Y. S. 770) unanimously affirming a judgment in favor of the defendant entered upon an order of the court at a trial term which granted a motion to set aside a verdict in favor of the plaintiff and for a dismissal of the complaint. In that case the defendant insured the plaintiff against loss arising from the liability imposed by law for damages on account of bodily injuries accidentally

suffered by an employee. An accident happened which resulted in a judgment against the plaintiff for $16,000. The defendant, according to the terms of its policy, undertook the defense for the plaintiff, and had paid, or was willing to pay, the sum of $10,000, the extent of its policy liability. The plaintiff sued the defendant for its negligence in failing to settle the claim, and asked to recover the excess of the judgment over the face of the policy, that was, the $6,000 less the $2,000 which the plaintiff alleged it was at all times willing to contribute. During the course of negotiations the accident case could have been settled with the injured employee for $8,500. The defendant insurance company offered $6,500. The plaintiff was given no notice of either offer.

It alleged that if notice had been given to it, the difference of $2,000 between the two offers would have been readily paid by it and the injury case settled. It was held that the defendant insurance company was not liable for negligence in refusing or failing to settle the case, and the judgment below was affirmed.

In this case the court said:

> "We may ask what would constitute negligence in the failure to settle a case, as distinguished from bad faith. Even when there was little likelihood of recovery, many reasonable persons would think it wise to settle rather than to take any chance with a jury. In most of the accident cases, disputed questions of fact arise. Is the insurance company to determine at its peril whether reasonable-minded men would believe the plaintiff's witnesses in preference to its own? Again, even on conceded facts, as frequently happens, a serious question of law arises as to the nature or extent of liability, if any. Is a jury to say that the insurance company was guilty of negligence in choosing to try out such a question in the courts rather than to settle? Those questions suggest the wisdom of adhering to the contract of insurance which the parties have made. If the insurance company is to be obligated to make a settlement under any given circumstances, it must be a matter to be dealt with between the in-

sured and the insurer, or else regulated by the Legislature.''

In *McDonald* v. *Royal Indemnity Ins. Co.* (Err. and App.), 109 N. J. Law, 308, 162 Atl. 620, the plaintiff was covered by a policy of indemnity insurance similar to the policy in this case. The plaintiff was involved in an automobile accident, and an action was brought against him. The action could have been settled by the indemnity company before trial for $2,000, but the company did not settle. There was a trial and a verdict and judgment against the plaintiff for $7,500. That judgment was set aside. Subsequently, the case could have been settled for $3,500, but it was not settled. In the second trial there was a judgment against the plaintiff for $20,000. The plaintiff then brought an action against the indemnity company to recover damages, alleging that it had failed and neglected to protect and represent him properly, as required by the terms of the policy.

The court, when holding that the action could not be maintained, said:

> ''It is to be noted that the obligation is to indemnify against loss within certain limits, to defend all suits, and to pay certain specified costs and expenses. The defendant appears to have done exactly what it was called upon to do under the terms of its policy. Nor is there any evidence that it defended the lawsuit growing out of the automobile accident in a negligent and careless manner. It did not agree to and was not obliged to settle by the payment of money the action brought against its assured. The allegations of negligence in the complaint were not proved at the trial.''

The court said further, quoting from *Schmidt & Sons Brewing Co.* v. *Travelers' Ins. Co.*, 244 Pa. 286, 90 Atl. 653, 52 L. R. A. (N. S.) 126:

> '' 'The rights of the parties are to be determined by the agreement into which they entered. By the provisions of the policy, the insurance

company was obliged to defend at its own cost any action against the insured and the entire management of the defense was expressly entrusted to it and the insured was forbidden to settle any claim or to interfere in any negotiations for settlement or in any legal proceeding against it. The insurer was under no obligation to pay in advance of trial and the decision whether to settle or to try was committed to it. The plain words of the policy have no other meaning.' ''

Other authorities which support the doctrine of the cases to which we have referred are: *The Cleveland Wire Spring Co.* v. *General Accident, Fire & Life Assur. Corp.*, 6 Ohio App. 344; *Georgia Casualty Co.* v. *Cotton Mills Products Co.*, 159 Miss. 396, 132 So. 73; *Mendota Electric Co.* v. *New York Indemnity Co.*, 175 Minn. 181, 221 N. W. 61; *City of Wakefield* v. *Globe Indemnity Co.*, 246 Mich. 645, 225 N. W. 643; *St. Joseph, etc., Co.* v. *Employers Indemnity Corp.*, 224 Mo. App. 221, 23 S. W. (2d) 215; *Davison* v. *Maryland Casualty Co.*, 197 Mass. 167, 83 N. E. 407; *Boling* v. *New Amsterdam Casualty Co.*, 173 Okla. 160, 46 Pac. (2d) 916; *Rumford Falls Paper Co.* v. *Fidelity & Casualty Co.*, 92 Me. 574, 43 Atl. 503; *Neuberger* v. *Preferred Acc. Ins. Co.*, 18 Ala. App. 72, 89 So. 90; *New Orleans & C. R. Co.* v. *Maryland Casualty Co.*, 114 La. 153, 39 So. 89, 6 L. R. A. (N. S.) 562; *Wynnewood Lumber Co.* v. *Travelers Ins. Co.*, 173 N. C. 269, 91 S. E. 946; *Georgia Casualty Co.* v. *Mann*, 242 Ky. 447, 46 S. W. (2d) 777.

We think that the rule that the rights of the parties are to be determined by the agreement into which they entered is supported by the better reasoning. The terms of the policy in this case are clear and unambiguous. The defendant is given the exclusive right to settle a case or to try it, as it may elect to do. To hold that this defendant is liable for negligence in not settling the Rule case would, in effect, impose obligations upon it which were not within the contemplation of the parties when the contract of idemnity was executed. The parties are charged with knowledge of the contents of their contract and are bound by the clear and unambiguous terms of the same.

In the absence of fraud, negligence or bad faith, alleged and established, it is not the duty of the court to read

into contracts conditions or limitations which the parties have not assumed. *Streat Coal Co.* v. *Frankfort Gen. Ins. Co.,* 237 N. Y. 60, 67, 142 N. E. 352. It is the duty of the court to construe contracts and not to make them for the parties. We hold that in this case the rights of the parties are to be determined by the terms of the contract into which they entered, and that the action for negligence in not settling the Rule case cannot be maintained. The defendant, in refusing to settle the Rule case, did what it had the legal right to do under the terms of the policy. The court below committed error when it overruled the motion of the defendant for a directed verdict.

In view of our disposition of the case, it is not necessary to consider the other exceptions briefed by the defendant.

### On Motion to Remand to Amend Complaint.*

When the decision in this case was handed down on the first day of the May Term, 1936, counsel for the plaintiff requested that the judgment order be withheld so that the plaintiff might file a motion to amend his complaint. This request was granted.

The plaintiff has filed a motion in this Court in which he moves that the judgment order be modified to ''Judgment reversed and cause remanded,'' or such other entry order as will direct this cause to be remanded to the county court and give the plaintiff opportunity to apply to the county court for leave to amend his complaint by alleging bad faith on the part of the defendant, hereinafter called the Casualty Company, in conducting negotiations for a settlement of the case of *Rule* v. *Johnson,* and especially in refusing to accept a proposition of settlement of that case which was within the limits of the liability of the Casualty Company under the terms of the policy issued by it to the plaintiff. The plaintiff, in support of his motion, refers this Court to certain evidence that appeared during the trial of the case in county court which he says will support a claim of bad faith on the part of the Casualty Company in its conduct of the negotiations for a settlement of the case of *Rule* v. *Johnson;* that this, and other evidence available to the plaintiff, will support his claim of bad faith on the part of the Casualty Com-

---

* Opinion on motion to remand filed November 7, 1936.

pany, after amendment of his complaint, and will entitle him to maintain his action against it. ''Therefore, the plaintiff makes this motion in order to prevent a failure of justice.''

Under the rule adopted by this Court in this case, an insurer against liability of the assured by reason of an automobile accident is not liable in an action of tort for negligence in failing or refusing to settle the case for a sum within the limits of its liability under the terms of the policy issued to the assured. In such a case, the insurer is liable only when its failure or refusal to settle the case is due to fraud or bad faith on its part. The plaintiff does not claim that there was any fraud on the part of the Casualty Company in the negotiations for a settlement of the case of *Rule* v. *Johnson,* so the only question here is whether there is evidence that fairly and reasonably tends to show that there was bad faith on its part in the negotiations for a settlement of that case.

The facts of the negotiations for a settlement of the case of *Rule* v. *Johnson,* stated in more detail than they are stated in the opinion, are in substance, as follows:

The trial of the case of *Rule* v. *Johnson* began in Windsor county court in the afternoon of July 9, 1931. In the trial of that case the plaintiff was represented by Loren R. Pierce, Esq., and J. Rolf Searles, Esq. W. O. Johnson, the defendant in that case, and the plaintiff in this case, was represented by Raymond Trainor, Esq., who had been employed by the Casualty Company, at the request of Mr. Johnson, to defend the action, and by Alban J. Parker, Esq., who was then associated with Mr. Trainor in the practice of law. Besides Mr. Trainor and Mr. Parker, the Casualty Company was represented by Paul J. McDonald, who was then its New England claims manager and claims attorney with an office in Boston, Mass. The authority of Mr. McDonald to settle cases was limited. He did not have the authority to settle the case of *Rule* v. *Johnson* except as he might be specially authorized by the home office of the Casualty Company to settle it. The home office of the Casualty Company is at Stevens Point, Wis.

Mr. McDonald arrived at Woodstock on the morning of July 9. On that morning he received a telegram from the home office instructing him to keep it closely informed of the developments of the trial, to wire immediately if the demands were reduced below the policy limit, to send a full report after his arrival,

and that the minor cases should be settled while he was in Vermont.

Before Mr. McDonald arrived at Woodstock there had been negotiations for a settlement of the claims against Mr. Johnson arising out of the accident. Mr. Pierce, who represented all of the claimants, had offered to settle all of the claims against Mr. Johnson for $10,000. That offer was not accepted. During the afternoon of July 9 there were further negotiations for a settlement, in which Mr. McDonald participated, which resulted in an offer by Mr. Pierce to settle all of the claims for $7,500. This offer was not accepted.

On the morning of July 10, before the trial of the case was resumed, there were further negotiations for a settlement. Mr. Pierce offered first to settle the case for $6,500, then for $6,000, and a few minutes later he said they would settle for $5,500. There is some conflict in the evidence as to the claims that were covered by that offer, but that is immaterial in this case. Mr. McDonald understood that the offer covered all the claims arising out of the accident, and he so reported to the home office. The case was tried below on that theory.

At 11.38 o'clock in the forenoon of July 10, Mr. McDonald sent a telegram to the home office, in which he described the injuries which the evidence of the plaintiff tended to show he received in the accident, and certain ill-conditions which medical evidence tended to show might result from his injuries. He stated in the telegram that the case was dangerous; that all claims could be settled for $5,500; that their attorney recommended settling for that amount, and that he agreed. He asked the home office to wire immediately. He did not receive a reply to that telegram nor to one sent by him to the home office in the early evening of July 10, asking it to answer his "wire," and in which he stated that the settlement situation was not improving with delay, until Saturday morning, July 11, when he received the following telegram from the home office:

> "Believe thirty-five hundred for all Johnson cases sufficient."

There was a short session of court on the morning of July 11. The court adjourned at 10.45 o'clock that morning until 2 o'clock Monday afternoon, July 13. Mr. McDonald left Woodstock

about noon, July 11, and did not return until Tuesday morning, July 14. In the evening of July 12, Mr. McDonald sent the following night letter to the home office:

"Settlement impossible within authorization. Demands major forty-seven hundred leaving eight hundred for truck and all minors if put through all at once. Believe settlement can now be made on minors and truck before verdict of major for twelve hundred possibly one thousand. Minors have all testified and believe settlement advisable before verdict, otherwise verdict on major may increase demands. If you agree authorize twelve hundred as these minor cases can be quite substantial on testimony given. Trial atmosphere not good as all have testified. Our assured interested himself on tire marks doing nothing to help injured. Police say mark of right tire of claimant time of crash three feet nine inches from right side of road indicating car completely to right of center. Our attorney still recommends fifty-five hundred. I believe if minor and truck cases settled, we could well gamble on major case on present demands. Assured financially responsible makes settlement difficult. Wire Boston office Monday night or night letter to Woodstock Inn so as to arrive Tuesday morning as court only holding brief session Monday afternoon. Trial will last till Thursday."

When Mr. McDonald left Woodstock on July 11, the offer to settle for $5,500 was open, and it remained open until about 11 o'clock Monday forenoon, July 13, when Mr. Pierce notified Mr. Trainor that the offer was withdrawn. Mr. McDonald did not learn that the offer had been withdrawn until he arrived at Woodstock on Tuesday morning, July 14.

After the offer to settle for $5,500 was withdrawn, Mr. McDonald was authorized by the Casualty Company to make two further offers to settle the Rule case alone. One offer made on July 13 was to settle that case for $3,500. The other offer made on July 15 was to settle it for $4,000. Both offers were sub-

286

mitted to counsel for Mr. Rule by Mr. McDonald, and both offers were declined.

As we have hereinbefore said, the only question before this Court is whether there is evidence that fairly and reasonably tends to show that the Casualty Company acted in bad faith in the negotiations that failed to result in a settlement of the case of *Rule* v. *Johnson* for $5,500, an amount within the policy limit.

What showing is necessary to make out a case of bad faith on the part of an insurer in refusing or failing to settle a case for an amount within the policy limit is a question that has troubled the courts.

Bad faith is an intentional tort of an active and affirmative nature. It is not a technical term used only in actions of deceit. It is an ordinary expression, the meaning of which is not doubtful. It means with actual intent to mislead or deceive another. It refers to a real and actual state of mind capable of both direct and circumstantial proof. *Penn. Mutual Life Ins. Co.* v. *Mechanics' Sav. Bank, etc., Co.* (C. C. A.), 73 Fed. 653, 38 L. R. A. 70. It will not be imputed unless there is something in the particular transaction which is equivalent to fraud, actual or constructive. *Morton* v. *New Orleans & S. Ry. Co., etc., Assoc.,* 79 Ala. 590.

The Casualty Company, being a corporation, could act only through its agents, whose state of mind was that of the Casualty Company. It appears that Mr. McDonald, Mr. Trainor and Mr. Alban Parker were the agents of the Casualty Company in the trial of the Rule case and in the negotiations for a settlement of that case. So far as they were authorized, their acts were the acts of the Casualty Company.

It does not appear why the home office of the Casualty Company refused to settle for $5,500; but it does appear that after the offer to settle for $5,500 was withdrawn, the Casualty Company continued the negotiations for a settlement by authorizing and directing Mr. McDonald to make two further offers for a settlement of the Rule case alone. Both of those offers were declined.

The presumption is that the Casualty Company acted in good faith in the negotiations for a settlement of the Rule case. *Hatch* v. *Bayley,* 12 Cush. (Mass.) 27; 10 R. C. L. 875; 22 C. J. 146. The burden was upon the plaintiff to prove that the failure of the Casualty Company to settle was actuated

by bad faith, and unless the proof submitted by the plaintiff bearing thereon was of sufficient weight to overcome the presumption, no obligation rested upon it to make denial thereof. *Wakefield* v. *Globe Indemnity Co.*, 246 Mich. 645, 658, 225 N. W. 643.

The plaintiff has referred us to certain parts of his testimony given in the trial below, which he claims tend to prove bad faith on the part of the Casualty Company in the negotiations for a settlement. He testified that on the morning of July 10, when the offer to settle for $5,500 was made, Mr. McDonald asked him whether he would put in $500 if the Company paid $5,000; that he replied that it was then below the limit of the policy, and why should he pay anything; that Mr. McDonald then said: ''If I can't make more than that out of it, I will let it go. It will go for $12,000 with the jury.''

 This statement of Mr. McDonald would tend to prove bad faith on the part of the Casualty Company in the negotiations for a settlement, but of course it must be considered in connection with the other evidence bearing upon the subject. It appears from the record that in the forenoon of July 10, soon after Mr. Pierce offered to settle for $5,500, Mr. McDonald sent a telegram to the home office in which he informed it of the offer to settle for $5,500, and stated that their attorney recommended settling for $5,500, and that he agreed. It also appears that Mr. McDonald stated in the night letter he sent to the home office in the evening of July 12: ''Our attorney still recommends fifty-five hundred.''

Mr. McDonald testified that he was friendly disposed toward Mr. Johnson through the trial of the Rule case and the negotiations for a settlement; that his office co-operated with Mr. Johnson in the preparation of the case, and prepared the case in all the particulars that Mr. Johnson suggested. He also testified that on the day he arrived at Woodstock he had a talk with Mr. Johnson in which he advised him to engage personal counsel to protect himself because of the possibility of a judgment over and above the policy limits; that Mr. Johnson replied that he did not want to engage a personal counsel, and suggested that the Casualty Company employ Mr. Keyser who had done preliminary work on the case. Mr. McDonald replied that they felt that they had competent counsel in Mr. Trainor, who had been employed at the suggestion of Mr. Johnson, and he did not

288

feel that they should go beyond that, and he refused to employ Mr. Keyser.

■ The refusal of the home office of the defendant company to accept the proposition of settlement is not, standing alone, sufficient to sustain a charge of bad faith. But where this refusal is persistently maintained against the advice of the counsel in charge of the defense, and the repeated recommendation of the adjuster present at the trial, who had assisted in the preparation of the case, fully understood it, and gave complete information concerning the situation, the hostile atmosphere of the trial, and the probability of a verdict in excess of the policy limits, the circumstances are, we think, sufficient to warrant an inference that the requisite good faith was not exercised.

■ ■ In passing upon this motion, it is not our province to decide whether there was in fact bad faith on the part of the Casualty Company. This would be a question for the jury upon pleadings appropriately amended. We think that it will subserve the ends of justice to remand the cause so that application for leave to amend may be made, and, if granted, a new trial may be had upon the issue. *Gaines* v. *Baldwin,* 92 Vt. 451, 454, 104 Atl. 825.

*Judgment reversed and cause remanded, with leave to apply for an amendment if plaintiff be so advised.*