Zimmerman, J.
The history of the controversy is as follows:
On February 3, 1958, in the city of Zanesville, Slater, driving his automobile, made a left-hand turn at a street intersection and struck James Duff, a pedestrian who was crossing the intersection, causing Duff substantial physical injuries. The following day, in the Zanesville Municipal Court, Slater pleaded guilty to the charge of failure to yield the right of way.
Slater carried a policy of liability insurance with the Motorists Mutual Insurance Company, having a maximum limit of $5,000. Duff employed legal counsel, who in December of 1958 instituted a suit for him against Slater, claiming damages of $69,681.52. Slater notified his insurer of the suit, and it assumed the defense, advising Slater that, since the amount *150 claimed was in excess of the maximum policy limit, he was at liberty to employ independent counsel to conserve his interests.
Under date of February 5, 1959, Duff’s counsel wrote the insurer through its Zanesville attorneys, in part, as follows:
“Last week your [the insurer’s] representative, A. I. Williams, was in my office to discuss this case [Duff v. Slater] at which time he indicated that, without making a definite statement to that effect, the policy limit in this case is $5,000. Mr. Micheli [attorney for the insurer and insured] had previously indicated that this is the amount of coverage; however, he also declined to be definite about the point, taking the position that he had this information from your insured and not from your company. I told Mr. Williams as I had previously told Mr. Micheli that Mr. Duff will settle his claim against Lewis M. Slater for a figure which does not exceed the policy limit of liability insurance coverage carried by Mr. Slater at the time of the accident. You are herewith advised that Mr. Duff remains willing to settle this case within such limits of liability insurance coverage and you are further advised that this offer will remain in effect until the final jury verdict is returned in this case, at which time you may consider it tvithdrawn.’’ (Emphasis supplied.)
On Wednesday morning, June 17, 1959, immediately preceding the trial of the case of Duff v. Slater, opposing counsel met in the judge’s chambers, at which time counsel for the insurer offered to settle the case for $5,000 and pay the costs. Counsel for Duff refused the offer on the ground that he had not been officially informed that the maximum policy limit was $5,000. The trial proceeded and Duff recovered the verdict and judgment for $20,000 against Slater. Slater’s present action against his insurer is based upon the following allegation near the close of his petition:
“Slater says that the actions of the insurance company in refusing to reveal to Duff or his attorneys the amount of insurance coverage in the case and refusing to settle Duff’s claim when it had an opportunity to do so within its policy limits constituted a lack of good faith on the part of the insurance company and this directly and proximately resulted in damage to Slater in the amount of $15,000 plus interest from June 19, 1959.”
*151 Under the decision of this court in Hart v. Republic Mutual Ins. Co., 152 Ohio St., 185, 87 N. E. (2d), 347, to support a recovery it was incumbent on Slater to allege and prove that his insurer’s behavior was of such a reprehensible and intolerable nature as to constitute bad faith.
In the case of Spiegel v. Beacon Participations, Inc.,, 297 Mass., 398, 416, 8 N. E. (2d), 895, 907, it is said in the course of the opinion by Rugg, Chief Justice:
“ ‘Bad faith’ is a general and somewhat indefinite term. It has no constricted meaning. It cannot be defined with exactness. It is not simply bad judgment. It is not merely negligence. It imports a dishonest purpose or some moral obliquity. It implies conscious doing of wrong. It means a breach of a known duty through some motive of interest or ill will. It partakes of the nature of fraud. * * *. It means ‘with actual intent to mislead or deceive another.’ # *
Again, in Johnson v. Hardware Mutual Casualty Co., 108 Vt., 269, 286, 187 A., 788, 796, it is remarked in the opinion:
“Bad faith is an intentional tort of an active and affirmative nature. * * * It is an ordinary expression, the meaning of which is not doubtful. It means with actual intent to mislead or deceive another. * * * It will not be imputed unless there is something in the particular transaction which is equivalent to fraud, actual or constructive.” (Compare Lawson é Nelson Sash & Door Co. v. Associated Indemnity Corp., 204 Minn., 50, 282 N. W., 481.)
The crux of this case is whether the insurer’s failure to make official disclosure of its maximum liability under the policy held by Slater can reasonably be classed as bad faith within the defined meaning of that term and under the evidence adduced. Of course, a liability insurer, collecting a premium for the policy issued, owes a duty of protection and good faith to its insured in accordance with the terms of the policy. Did the insurer here fail in such respect? The evidence discloses that information had been imparted to counsel for Duff in separate conversations by a representative of the insurer and by one of its counsel that the maximum limit of the Slater policy was $5,000, and this was done with sufficient definiteness and in such circumstances that Duff’s counsel could have had little reason *152 to doubt the truth of such information. Moreover, prior to the trial of Duff’s action against Slater, a firm offer was made him by counsel for the insurer to settle the case for $5,000, which was in fact the full extent of insurer’s liability under the policy and a sum which represented the amount for which Duff’s attorney, who, incidentally, is an attorney for Slater in the present action, had agreed to compromise the case. Although in the circumstances of this particular case it may have been arbitrary and a display of poor judgment by the insurer not to disclose officially the limit of liability under the policy held by Slater, we think all factors considered its failure to do so falls short of bad faith as a matter of law. By the information coming to him from two sources, counsel for Duff could not reasonably have doubted that the maximum limit of liability under the policy was $5,000. Furthermore, he was offered that amount, before trial. To saddle the insurer herein with the payment of a $15,000 judgment on the ground that it acted in bad faith represents an unfair and wrong result. There should have been at least a directed verdict for the insurer at the close of all the evidence or a judgment in its favor notwithstanding the verdict.
The judgment of the Court of Appeals is, therefore, reversed and final judgment rendered for the defendant insurer.

Judgment reversed.

Taft, Crawford and Griffith, JJ., concur.
Weygandt, C. J., Matthias and O’Neill, JJ., dissent.
Crawford, J., of the Second Appellate District, sitting by designation in the place and stead of Herbert, J.