HEMAN HASTINGS, ADMINISTRATOR OF HEMAN HASTINGS v. JABEZ D. PERRY, JABEZ D. PERRY, JR., ANDREW PERRY, JOSEPH HAZEN, SAMUEL CULVER, JR., JOHN HOWE, ABNER PEMBER AND JOSHUA POTTER.

### IN CHANCERY.

A mortgagee is entitled to an injunction, to restrain the mortgagor from the commission of waste, by which the mortgage security is in danger of being reduced in value below the amount of the mortgage debt.

And the court, in such case, will not only restrain waste, but will, if the bill be brought for that purpose, proceed and take an account of the waste actually committed, and decree satisfaction to be made therefor to the mortgagee.

And such decree will not only be made against the mortgagor, but also against those, not connected with the mortgage title, who have committed acts of waste upon the premises by license from the mortgagor, after condition broken, and with full knowledge of the respective rights of the mortgagor and mortgagee.

A decree of the court of chancery will not be disturbed by the supreme court upon a question relating to costs alone.

APPEAL from the court of chancery. The orator alleged in his bill, in substance, the death of the intestate, Heman Hastings, and the grant of administration to the orator; that the intestate, in August, 1839, sold to the defendant Jabez D. Perry a farm in Wells, and received back a mortgage of the same farm to secure the payment of five notes of eleven hundred dollars each; that the mortgage became forfeited by breach of the condition; that Perry conveyed the premises to the defendants Jabez D. Perry, Jr., and Andrew Perry, and they conveyed to the defendant Joseph Hazen; that the orator commenced an action of ejectment against these four defendants at the September Term, 1841, of Rutland county court, and recovered judgment against them, and that they entered a review of the case; that the premises were insufficient security for the payment of the mortgage debt, and that Jabez D. Perry was insolvent; that there was a large amount of valuable timber growing upon the premises; and that the defendants, in February, 1842, and while

the action of ejectment was still pending, well knowing these facts, and combining to injure the orator, proceeded to cut down and carry away large quantities of the timber then growing upon the premises, and disposed of the same, and threatened to cut down and carry away still more of the timber. And the orator prayed for an injunction, and that an account might be taken of the amount of timber cut by the defendants, and they be decreed to make satisfaction to the orator therefor. The *subpœna* bore date February 22, 1842; and the injunction prayed for was granted by the chancellor upon the issuing of the *subpœna*.

The bill was taken as confessed by Andrew Perry and Joseph Hazen. The remaining defendants answered severally, either admitting or professing ignorance of the matters alleged in the bill as to the title, but denying all combination to injure the orator, or that they had any knowledge, that the land was inadequate security for the mortgage debt, or that they had made the threats alleged in the bill; but they admitted, that they had taken timber from the premises by license of the mortgagor, or of his assignees,—specifying the quantity particularly. They also alleged, that after the filing of the bill, and after all intrusion upon the premises by them had ceased, the orator had obtained judgment, in his action of ejectment, for the possession of the premises and ten cents damages and his costs, and that time for redemption had been allowed, and that the orator, at the expiration of that time, had entered into, and had retained, possession of the premises.

The answers were traversed, and testimony was taken,—the substance of which is sufficiently detailed in the opinion of the court. An account was ordered to be taken of the amount of waste committed; and the master reported the amount of timber cut by each defendant,—amounting in the whole to $539,14.

The court of chancery, September Term, 1846,—WILLIAMS, Chancellor,—decreed, that each defendant should pay to the orator the sum reported by the master as the amount of the waste committed by such defendant, and that the orator's costs should be paid by all the defendants jointly. From this decree the defendants appealed.

35

*C. B. Harrington* for orator.

The mortgagee has such an interest in the estate mortgaged, that he is entitled to hold his security unimpaired. 4 Kent 160. *Brady* v. *Waldron,* 2 Johns. Ch. R. 148. The principle is well settled in England, and by the supreme court of this state, that the mortgagor and his assignees in possession, after the law day expires, are liable to the mortgagee for waste. 53 Law Lib. 331. *Walker* v. *Hitchcock,* 19 Vt. 634. *Hutchins* v. *Lathrop,* Washington Co., 1845. *Smith* v. *Goodwin,* 2 Greenl. 173. *Stowell* v. *Pike,* Ib. 387. *Hitchman* v. *Walton,* 4 Mees. & Welsb. 409. *Patridge* v. *Bere,* 3 B. & A. 604. No question is better settled, than that the mortgagee, on filing his bill, may have an injunction out of chancery to stay waste committed by the mortgagor, his assignees, or third persons. Eden on Injunct. 118. *Brady* v. *Waldron,* 2 Johns. Ch. R. 148. *Ld Blaney* v. *Mahon,* 22 Vin. 521. *Robinson* v. *Litton,* 3 Atk. 210. *Farrant* v. *Lovel,* Ib. 723. *Usborne* v. *Usborne,* 1 Dick. 75. 2 Story's Eq. 197, 286. And when the court of chancery extends relief by injunction, it will, upon that ground, and to avoid a multiplicity of suits, compel an account of waste already committed. *Winship* v. *Pitt,* 3 Paige 259. Jeremy's Eq. 510. *Dana* v. *Nelson et al.,* 1 Aik. 252. *Beardsley* v. *Knight et al.,* 10 Vt. 185.

The only question, which has ever been considered debateable, is, whether a bill brought for a discovery and an accounting could be sustained, without a prayer for an injunction to stay waste;—but when an injunction has legally issued, an accounting has followed, as a matter of course. *Brady* v. *Waldron,* 2 Johns. Ch. R. 148. *Fay* v. *Brewer,* 3 Pick. 203. Eden on Injunct. 146. *Jesus' College* v. *Bloomer,* 3 Atk. 262. *Putney* v. *Warren,* 6 Ves. 73, 89. *Univ. of Oxford & Cambridge* v. *Richardson,* 6 Ves. 689, and note, 714. 2 Story's Eq. 206. *Greener* v. *Eyer,* 9 Ves. 341. *Winship* v. *Pitt,* 3 Paige 259. *Pawlet* v. *Welton,* 3 Ves. 374.

But even if it should be admitted, that the mortgagor is not liable for waste, either at law or in equity, the other defendants could not avoid a decree against them. The mortgagee has the whole estate, against all but the mortgagor, in the same manner as if it were absolute. *Fay* v. *Brewer,* 3 Pick. 203. *Hitchman* v. *Walton,* 4 M. & W. 409. They are mere trespassers, and therefore are liable to account for waste. 2 Story's Eq., § 918.

The joint decree against the defendants for costs was correct. It was the exercise of a discretion, which this court cannot revise. *Mott* v. *Harrington*, 15 Vt. 185. *Ward* v. *Sharp et al.*, Ib. 115.

*G. W. Harmon* for defendants.

1. It is insisted, that this bill, so far as it seeks for an account, cannot be sustained, even against the mortgagor, or his assigns.

At law, the writ of *estrepement*, the action of *waste*, and an action on the case in the nature of *waste*, were successively the appropriate remedies by the remainder-man, or reversioner in fee. 3 Bl. Com. 225, 229. At length courts of chancery granted injunctions to *stay waste;* and, after some time, extended their power, so as to take jurisdiction by way of *account* for the waste committed before injunction. This was to save multiplicity of actions. *Garth* v. *Cotton*, 3 Atk. 751. *Watson* v. *Hunter*, 5 Johns. Ch. R. 169. *Winship* v. *Pitt*, 3 Paige 259. For some time the court refused to entertain a bill for an account for the waste, unless as incident to a bill for an injunction. *Jesus' College* v. *Bloom*, 3 Atk. 169. *Smith* v. *Cook*, Ib. 378. *Lee* v. *Alston*, 1 Ves. 78. *Watson* v. *Hunter, ub. sup.* Afterwards bills for account for waste were sustained, on the ground that the tenant thereby became bailiff and receiver to the remainder man, or reversioner. *Lee* v. *Alston* and *Garth* v. *Cotton*, above cited. But no bill for *account* for *waste* has been sustained, except when an action at law would be sustained,—as by a remainder man, or reversioner; and in case of mortgagee and mortgagor, though injunctions have been granted to stay waste, yet in no case has an account been given for what has been taken from the land.

To sustain this bill, even as against the mortgagor, or his assigns, for the *account*, is inconsistent with the rights, liabilities and relationship, which have long been settled as existing between mortgagor and mortgagee. First, the mortgagor is the *owner* of the land; and is as much so, after the debt has become due, as he was before; and he continues *owner*, until the equity of redemption is actually foreclosed and the time of redemption expired. Second, the mortgagee is a *creditor*, having a lien for his debt, a mere personal chattel, and he remains but a creditor, until an actual foreclosure has extinguished the debt. —— v. *Hicks*, 1Vern. 412. 2 Pow. on Mort. 683. 3 Bac. Ab. 641. 5 T. R. 654. *Martin* v. *Mowlin*,

Hastings, Adm'r, *v.* Perry et al.

2 Burr. 969. *King* v. *St. Michael's,* Doug. 630. In New York the mortgagor is siezed of the land, notwithstanding the mortgage, and is the *owner,* as to all persons except the mortgagee, and the widow of the mortgagor is entitled to dower. *Coles* v. *Coles,* 15 Johns. 319. *Hitchcock* v. *Harrington,* 6 Ib. 290. *Wilson* v. *Troup,* 2 Cow. 195. *Collins* v. *Torrey,* 7 Johns. 278. *Edwards* v. *Farm. Ins. & Loan Co.,* 21 Wend. 467. *Astor* v. *Hoyt,* 5 Wend. 603. *Runyan* v. *Merserau,* 11 Johns. 534. *Sedgwick* v. *Hollenback,* 7 Johns. 376. In Massachusetts there are similar cases. *Groton* v. *Boxborough,* 6 Mass. 50. *Goodwin* v. *Richardson,* 11 Ib. 469. *Bolton* v. *Ballard,* 13 Ib. 227. *Kelly* v. *Beers,* 12 Ib. 387. The same principle is established in Maine. *Blarney* v. *Beance,* 2 Greenl. 182. In Connecticut the mortgagor is regarded as the *owner* of the land to every purpose, except the right of the mortgagee to take possession. *Barkhamsted* v. *Farmington,* 2 Conn. 600. *Fish* v. *Fish,* 1 Ib. 559. *Huntington* v. *Smith,* 4 Ib. 235.

From these decisions it follows, that the mortgagee has a lien for his debt; that he may take possession, or commence ejectment for it; that, so long as he permits the land to remain in the mortgagor's possession, he consents that he may use it, and the mortgagee rests content with the accruing interest on his debt, and leaves the mortgagor to all the rights of owner, without account; that when the mortgagee takes possession, he becomes trustee and bailiff to the mortgagor, for whatever he obtains from the land; and that, as to third persons, the mortgagor remains owner, for all purposes, until the mortgagee actually forecloses, or enters into possession,—and therefore third persons may, in all respects, deal with the mortgagor, while he is in possession, as owner.

In chancery, as at law, the right to sustain a suit must actually exist and be perfect, when the suit is commenced. In this case, the right of the orator to recover depended upon contingency; and this cannot be cured by what has subsequently transpired.

2. It is insisted, that even if this bill for *account* were sustained against the mortgagor, and his assigns in possession, it is not sustainable against the other defendants. Whatever they have taken severally has been by the license of the mortgagor in possession, the *owner,* and for consideration to him, and without fraud. Hence they are not wrong doers. When the account is sustained in chan-

cery, it is only against the defendant, as bailiff. Eden on Injunct. 251. *Lee* v. *Allston*, 1 Ves. 78. Mad. Ch. 88. Pursuing the tenant in possession in chancery as *bailiff*, for account, is to ratify his proceedings; and thereby third persons are left answerable only to him with whom they dealt. *Watson* v. *Hunter*, 5 Johns. Ch. R. 169.

3. Joint costs should not be allowed against the defendants.

The opinion of the court was delivered by

HALL, J. The bill is brought by the administrator of a mortgagee against the mortgagor and three others claiming title by him, and also against four others, who were not parties to the title, complaining of the commission, by all the defendants, and the farther threatened commission by them, of waste on the mortgaged premises, by cutting and carrying away wood and timber trees; and praying for an injunction against future waste and an account for waste committed. An injunction was granted on the filing of the bill, and, after answer and testimony taken, an account was ordered, and the master ascertained and reported the amount of the waste committed by each defendant,—upon which the chancellor made a decree, directing the payment by the defendants of the several sums reported as the waste of each, together with the costs of the suit by all the defendants jointly. From this decree the defendants appealed.

From the bill, answers and testimony it appears, that the complainant, after condition broken, at the September Term of the county court in 1841, commenced his action of ejectment against the four defendants first above mentioned, and at the same term recovered judgment against them, which they reviewed; that at the April Term, 1842, final judgment was rendered against them; and, on motion to redeem, the amount of the mortgage money was ascertained and a time given for redemption,—which expired May 1, 1842, without payment.

In January and February, 1842, pending the ejectment, the waste complained of was committed by the defendants,—the four defendants who were strangers to the mortgage title not being in possession, or acting in concert with each other, but separately cutting and carrying away timber, by license or purchase from some of the other defendants, parties to the title. It also appears from the tes-

timony, that the value of the mortgaged premises, with the amount of the waste ascertained by the master, would both together be less than the sum due on the mortgage.

It is insisted in behalf of the defendants, that this bill cannot be sustained for an account, either against the parties to the mortgage, or the other defendants.

Of the right of the mortgagee to an injunction to restrain the mortgagor from the commission of waste, by which the mortgage security is in danger of being reduced in value below the amount of the mortgage debt, there can be no question. The doctrine has been too long established, and too frequently acted upon in this State, to be now controverted. This bill, however, goes a step farther, and, in addition to an injunction to stay future waste, asks for an account of and satisfaction for waste already committed; and to this portion of the remedy the principal objections of the defendants to the decree of the chancellor are interposed.

It was laid down by Ld. HARDWICK, in *Jesus' College* v. *Bloom,* 3 Atk. 262, as a general rule, that in bills for injunctions for waste the court should proceed to make a complete decree and give the party satisfaction, and not oblige him to bring an action at law. This rule has been acted upon in many subsequent cases; and it has become a common doctrine, found in the elementary writers, that in all cases, in which a bill for an injunction will lie, the courts of equity, upon the principle of preventing a multiplicity of suits, will give an account of and satisfaction for waste already committed. Eden on Injunctions 146. 1 Mad. Ch. 87, 149. 3 Daniels' Ch. 1856. 1 Story's Eq., Sec 517, 518. It is, indeed, but the ordinary principle, applicable to chancery jurisdiction in general; that when a party is obliged to resort to chancery for one purpose, his case will be retained, until the whole matter is finally disposed of. *Dana* v. *Nelson,* 1 Aik. 252. *Beardsley* v. *Knight,* 10 Vt. 185.

It seems, also, to be a principle of chancery jurisdiction, that when waste has been committed, and the titles of the parties are of an equitable character merely, so that the party has no remedy for the injury at law, a bill will be sustained for an account alone, for the very reason, that there is no remedy at law. *Garth* v. *Cotton,* 1 Dick. 183. *Landsdown* v. *Landsdown,* 1 Mad. R. 116. *Wil-liams* v. *Duke of Bolton,* 1 Cox 72. 3 P. Wms. 368, n. 2 Ves.

151. Eden. on Injunct. 250. 3 Daniels' Ch. 1856-7. It is therefore quite immaterial, in this case, whether the plaintiff have a remedy for satisfaction for the waste at law, provided he is entitled to one in equity; for in the former case the account should be decreed, as incident to the injunction; and in the latter, as an independent remedy.

I am not by any means prepared to say, that the plaintiff, in this case, would not have a remedy for the waste, at law. It has, indeed, been held in New York, that a mortgagee cannot sustain an action for waste against the mortgagor, before condition broken. *Peterson* v. *Clark*, 15 Johns. 205. But in Maine the mortgagee is allowed to maintain trespass against the mortgagor, for any injury to the freehold, inconsistent with the estate of the mortgagor. *Smith* v. *Goodwin*, 2 Greenl. 173. *Gore* v. *Jenness*, 1 Appleton 53. And in New Hampshire the mortgagee has the like remedy for waste against the mortgagor. *Pettengill* v. *Evans*, 5 N. H. 54. *Smith* v. *Moor*, 11 N. H. 54. The question in regard to the remedy of a mortgagee at law for waste has recently come before the English courts. It was held by the King's bench, in *Patridge* v. *Bere*, 5 B. & Ald. 604, that the mortgagee might consider the mortgagor as his tenant; and in *Hitchman* v. *Walton*, 4 Mees. & Welsb. 409, it was determined, that the plaintiff, a mortgagee, might sustain an action on the case for waste committed by the assignee of the mortgagor, after condition broken,—the plaintiff describing himself, in his declaration, as a reversioner, and the defendant as his tenant; and it was also held, that the plaintiff was entitled to recover, on a count in trover, for the value of fixtures improperly removed from the estate by the defendant. The English doctrine seems to be, that the mortgagee has his election, either to consider the mortgagor as his tenant and himself a reversioner, or to treat him as a trespasser, by bringing his action of ejectment. *Doe* v. *Barton*, 11 A. & E. 314.

In this state it has been held, that after condition broken, and until entry, or action brought, the mortgagor is. tenant to the mortgagee; and that, after the determination of the tenancy by notice to quit, the mortgagor is liable for rents and profits,—which may be recovered in ejectment. *Wilson* v. *Hooper*, 13 Vt. 653. *Stedman* v. *Gassett*, 18 Vt. 346. *Lyman* v. *Mower*, 6 Vt. 345. It has also

been determined, that the mortgagor, by cutting timber after condition broken, is a wrong doer, and acquires no title to it, but that the property remains that of the mortgagee. *Morey* v. *Mc Guire,* 4 Vt. 327. *Lull* v. *Matthews*, 19 Vt. 322. It would seem but a very short step farther, to adopt the English doctrine, by declaring that the party shall have a legal remedy, for what is already held to be an invasion of his legal rights.

But it is unnecessary to decide this question; as we are all agreed, that, if the plaintiff has no legal remedy for the injury sustained by the waste of the defendants, he ought, under the circumstances of this case, to have one in equity.

The ground of an injunction against a mortgagor, to restrain waste, is the right of the mortgagee to have the whole benefit of his original security, and to have it preserved unimpaired from the wrongful injury of the mortgagor, so that it may remain of sufficient value to pay the debt. If there is danger, that the mortgagor will, by such acts, so reduce the value of the security, equity will interpose, to prevent him. If, before the preventive remedy can be applied, he have so reduced the value, the equity is equally strong, that he should make the security good, by satisfaction for the waste he has committed.

In this case the parties to the mortgage had notice, by an action of ejectment, that they were considered as trespassers by remaining in possession. They have therefore no excuse for the acts complained of, and we think this bill may be sustained for an account against them. It might not necessarily follow, that persons committing acts by license of the mortgagor, which would be waste in him, would be liable in equity to the mortgagee. But in this case the other defendants, so far as it regards the timber obtained by them, are to be put upon the same footing with the mortgagor. They took the timber under color of the mortgagor's pretended right, pending an action of ejectment for the premises, and with actual knowledge also, as we are satisfied from the evidence, of its pendency, and that they were, by taking it, invading the rights of the mortgagee. They do not stand in the position of purchasers in good faith of the mortgagor, but in the light of confederates with him to impair the mortgage security; and standing in that light, they

should account to the mortgagee for the value of his property, which has come to their hands.

It is objected to a recovery for waste by a mortgagee, that his estate is contingent;—subject to be defeated by the payment of the mortgage money. The same objection lies to the recovery of damages by the mortgagee in ejectment; with this difference in favor of the remedy for waste,—that the *mesne* profits are recoverable in the ejectment in all cases; whereas the right to recover for waste may, perhaps, only exist, where the mortgage security is insufficient. If, after redemption by the mortgagor, money should be found in the hands of the mortgagee, received or recovered either for *mesne* profits or for waste, equity would doubtless compel him to refund. In this case, however, all uncertainty is removed. Before the taking of the account, the equity of redemption had been foreclosed, the land had passed to the mortgagee without redemption, and its value, together with the sum recovered for the waste, is found insufficient to pay the mortgage debt.

An objection has been made to the allowance of joint costs against the defendants. Upon this point it is sufficient to say, that no instance is found, in which this court has disturbed a decree of the court of chancery on the question of costs alone; and that the error of the chancellor, in this case, is not sufficiently apparent, to induce us to make a precedent of that kind.

The decree of the chancellor is affirmed, with costs, and the case remanded to the court of chancery to carry it into effect.