HAROLD B. STRATTON *v.* JAMES R. CARTMELL.

February Term, 1945.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed May 1, 1945.

*Wayne C. Bosworth* for the defendant.

*Fenton, Wing & Morse* for the plaintiff.

SHERBURNE, J. This is a suit to recover a commission upon the sale of a locker plant. From the facts found it appears that at all times material the plaintiff was the branch manager of defendant's store in Rutland. In March, 1941, the plaintiff received a letter, Exhibit 1, from the defendant addressed to him and signed by the defendant, the body of which reads as follows:

> "Confirming our agreement in regard to the basis on which our branch managers are to work from March 1st, 1941, on is as follows:
>
> "Manager is to be paid on a commission of 12% on all his personal sales, together with a 2% override on all sales made by salesmen who are on a commission basis.
>
> "All sales must carry at least a 10% net profit for this commission to be paid.
>
> "The drawing account must be kept within the commission limitation.
>
> "All of the above is based on the monthly operation. Other conditions of this agreement will be made later."

We quote findings 5, 6, 7, 8, 9, and 10 so far as material:

> "(5). On or about May 17, 1943, the plaintiff brought about and was instrumental in bringing about the sale of the Fair Haven Locker Plant so-

called, and such sale was the plaintiff's 'personal sale.'

"(6). The selling price of the Fair Haven Locker Plant was Thirteen thousand, seven hundred and seventy-seven dollars and ninety-five cents ($13,-777.95).

"(7). The cost to the defendant of the Fair Haven Locker Plant was Eleven thousand, four hundred and twenty-one dollars and twenty-five cents ($11,-421.25).

"(8). Plaintiff's services relative to the sale of the Fair Haven Locker Plant were rendered by him to the defendant in pursuance of and in reliance on Plaintiff's Exhibit No. 1.

"(9). Plaintiff's Exhibit No. 5 is a statement of Federal Income Tax for 1943 withheld by the defendant from wages of the plaintiff and the income tax therein stated to have been withheld includes an income tax based on a 12% commission to the plaintiff on the selling price of the Fair Haven Locker Plant.

"(10). At the time of the trial the defendant had received from the owners of the Fair Haven Locker Plant one promissory note in the amount of $3,-000.00, and a second note in the amount of $2,000.00. The balance of the sales price referred to in paragraph No. 5 has not been paid the defendant and stands on open account."

It was conceded that the defendant was entitled to have the sum of $806.74 deducted from any commission the plaintiff might be entitled to receive. Judgment was entered upon the findings of fact and the concession for the plaintiff to recover $846.61. This sum was arrived at by allowing a commission of 12% upon the selling price of the locker plant and deducting therefrom $806.74. The only exception is to the judgment. Under this exception the defendant claims that the lower court misconstrued the terms of Exhibit 1 relative to the amount of commission, and that on the facts found the suit is premature.

■ There are certain well established rules for the construction of written instruments to ascertain the intention of the parties which are applicable to this case. I. The intention of the parties, when ascertained from the entire instrument, prevails over technical terms or their formal arrangement. *Kennedy, Admr.,* v. *Rutter, Admr.,* 110 Vt 332, 338, 6 A 2d 17, and cases cited. II. It is the duty of the court, if possible, to construe the instrument so as to give effect to every part, and form from the parts a harmonious whole. *Freeguard* v. *Bingham,* 108 Vt 404, 406, 187 A 801; *Vermont Shade Roller Co.* v. *Burlington Traction Co.,* 102 Vt 489, 502, 150 A 138 and cases cited. III. While the language of a written instrument governs in determining its effect and operation, in construing such language the nature and condition of the subject matter, the purposes sought to be accomplished, and the circumstances in which the parties contract tending to throw light on their apparent intention at the time the instrument was executed, may be considered. *Freeguard* v. *Bingham, supra; Vermont Shade Roller Co.* v. *Burlington Traction Co., supra,* and cases cited; *Vermont Kaolin Corp.* v. *Lyons,* 101 Vt 367, 376, 143 A 639, and cases cited. Stated a little differently, when the intent of the parties upon the face of the instrument is doubtful, or the language used will admit of more than one interpretation, the court will look at the situation and motives of the parties, the subject matter of the contract, and the object to be attained by it; and will receive parol evidence to this end. *Kinnear & Gager Mfg. Co.* v. *Miner,* 88 Vt 324, 326, 92 A 459; *Bacon* v. *Dodge,* 62 Vt 460, 20 A 197; *Wing* v. *Cooper,* 37 Vt 169, 178; *Lowry* v. *Adams* 22 Vt 160, 165. IV. Doubtful language in a contract should be construed most strongly against the party who framed and wrote it. *Manchester Marble Co.* v. *Rutland Ry. Co.,* 100 Vt 232, 242, 136 A 394, 51 ALR 628; 12 Am Jur, Contracts, para. 252. V. But if the language of the instrument is clear and unambiguous its intent cannot be altered by evidence of extraneous circumstances; and in such situation the instrument is to be interpreted by its own language, and the understanding of the parties must be deemed to be that which their own written instrument declares. *Vermont Marble Co.* v. *Eastman,* 91 Vt 425, 444, 445, 101 A 151; *Greene* v. *Helme,* 94 Vt 392, 396, 111 A 557; *Wood* v. *James,* 93 Vt 36, 39, 106 A 566; *Freeguard* v. *Bingham, supra.*

The plaintiff claims that the letter, Exhibit 1, is ambiguous. He thinks that he is entitled to his full 12% commission even though the defendant does not get his 10% profit after it is paid. If we assume that the locker plant had been sold at a price of exactly 10% over cost he still insists that he would have been entitled to his 12% commission, even though the defendant after such commission was paid would have lost a little over 3% on the deal. The defendant claims that the letter is unambiguous. He insists that it means, where the sale as here is for a sum that will not yield a 10% profit to him and also allow for a 12% commission to the plaintiff, that the plaintiff is only entitled to the difference between the cost plus 10% net profit and the sale price. He even argues that his 10% profit is equivalent to a 10% commission on the selling price.

Although this letter could well have been more carefully framed the purpose and intent are obvious. The necessary inference is that the defendant has several branch stores and branch managers. All of these branch managers are to be compensated upon a uniform commission basis. As to whether they are to receive the full commission of 12% upon their personal sales depends upon the construction of the sentence "All sales must carry at least a 10% net profit for this commission to be paid."

"Net profit" is usually applied to a business as a whole. In this sense it means the net proceeds obtained by deducting from the gross proceeds all forms of expense or outlay involved in, or incidental to, the business in question, as in calculating the annual profit of a business, where insurance, wages, and other items of current expense are deducted. Webster's New International Dictionary. The same authority gives the following definition of "profit": "The excess of the price received over the cost of purchasing and handling . . . the particular goods." It is clear from the terms of the letter that this latter definition expresses the intention of the writer. The commission and profit were to be figured on each sale and not on the business as a whole. This is made doubly clear by the provision for a 2% over-ride on sales made by salesmen on a commission basis, and by the provision that everything is based upon the monthly operation. If net profit in the sense defined by Webster had been meant it would have been necessary in a large sale like the one here involved to have figured out the proportion of the store overhead chargeable to it, and to

have waited until the property was fully paid for before such a profit could be determined, which manifestly could seldom be done on a monthly operation basis. This intention, so ascertained from the entire instrument, prevails over the technical term "net profit." So construed the quoted sentence means that all sales must carry at least a 10% profit on the cost of goods sold for the commission to be payable.

The purpose of operating a store is to make a profit on the goods sold. The defendant in lieu of a salary pays his store managers on a commission basis, but, unless the goods are sold for more than the cost plus the commissions paid, there is nothing to pay the overhead of his stores, such as rent, light, heat, insurance, taxes and other necessary expenses to say nothing about a return upon the money invested in the business and something for his personal services in the overall management of the business. A 10% profit to him would probably take care of these items.

The parties hereto agree that no commission would be payable unless a sale was at a price equivalent to 10% over cost. As to whether a sale must be at a price high enough to yield the defendant a 10% profit and also to allow for a 12% commission before any commission is to be paid, we need not decide because of the defendant's admission. We think that it is obvious that before the plaintiff is entitled to any commission the defendant must get his 10% profit. If there is left anything after the cost of goods plus 10% is taken out of the selling price, we hold, upon the defendant's concession, that the plaintiff is entitled to it up to, but not exceeding, 12% of the sale price. This conclusion is fair to the plaintiff. As branch manager he had some discretion as to the price at which he would sell goods. In a sale of the size of the one here involved he may have concluded that he would rather take less than the full 12% commission than lose the sale and get no commission at all. Computed upon this basis he is entitled to a commission of $1214.58.

■ The plaintiff claims that the withholding statement, Exhibit 5, shows a practical construction by the parties of the amount of plaintiff's commission on this sale. There is no occasion to consider whether the parties may have placed a practical construction upon the letter in this respect, for the language used is clear and unambiguous, and its intent cannot be altered by evidence of extraneous circumstances.

■ On his contention that the suit is premature the defendant calls attention to the sentence in finding 10 reading: "The balance of the sale price referred to in paragraph No. 5 has not been paid the defendant and stands on open account." He argues that an "open account" means an account that is not settled, determined or ascertained. Here, as in the case of the phrase "net profit" heretofore discussed, technical terms must yield to the intention ascertained from all the findings. And doubtful findings are to be so read as to support the judgment, if they reasonably may be. *Cook v. Holden*, 113 Vt 409, 413, 35 A2d 353; *Campbell v. Ryan*, 112 Vt 238, 22 A2d 502; *Gardner v. Gauthier*, 101 Vt 147, 149, 141 A 682; *Reed v. Hendee*, 100 Vt 351, 354, 137 A 329. Findings Nos. 5 and 6 show that a sale was brought about for a fixed price. Finding No. 10 shows that two promissory notes amounting to $5000.00 have been received toward this price, and that the balance has not been paid and stands on open account. There can be no uncertainty about this balance. The reasonable inference is that the notes were taken to cover deferred payments and that the balance was due and payable on demand. We will so infer in support of the judgment.

The defendant further says that until such time as the money on the open account is collected or is ascertained to be collectible it is impossible to determine the net profit; and that there is no finding as to whether the account is collectible, or as to whether expense will be incurred in its collection. This raises the question as to when the commission was to be due, when the sale was made, or when all the purchase price had been collected. As we have seen in a sale of this size the price could seldom be all collected in the month when the sale was made, so as to come within a monthly operation. It would seem that the plaintiff was entitled at the end of each month to his commissions on sales made during that month, whether the price had been collected or not, but any doubt as to this is removed by Exhibit 5. Defendant's withholding statement is an admission that the plaintiff is entitled to the commission on this sale. If there is any ambiguity in Exhibit 1 in this respect it may be explained by this admission. 20 Am Jur Evidence, para. 579; *Hill v. Powers*, 16 Vt 516, 521. Then too, in such case Exhibit 1 is to be construed most strongly against the defendant because he wrote it.

The defendant argues that the circumstances under which the defendant made the withholding statement to the collector of internal revenue were such that it is obvious that the only safe thing for the defendant to do was to withhold, account to the collector, and charge the payment to his account with the plaintiff, so as to avoid the danger of penalties in case he should be defeated in this suit. As the Federal Act of June 9, 1943, did not require a withholding until remuneration was paid, and the findings do not show any extenuating circumstances, there is no merit in this argument. We recognize the rule stated in *McLean* v. *Windham Light and Power Co.*, 85 Vt 167, 176, 81 A 613, that one who goes beyond the requirement of his contract in circumstances of doubt ought not from that fact to have his act given the effect of a concession, but nothing is here shown to bring this withholding statement within the rule.

As we have seen, the county court allowed a commission of 12%, whereas it should have only allowed a commission of $1214.58. Deducting from this the sum of $806.74, pursuant to the concession, leaves $407.84.

*Judgment reversed, and judgment for the plaintiff for $407.84, with interest thereon from date of the judgment below, and costs below, less the defendant's costs in this Court.*