## Carl A. and Edith M. Page
v.
## Lyle H. Hall, Inc.

[ 214 A.2d 459 ]

June Term, 1965

Present: **Holden, C. J., Shangraw, Barney, Smith and Keyser, J. J.**

Opinion Filed November 8, 1965

*John S. Burgess* and *Ralph Chapman,* on the brief, for plaintiffs.

*John and O'Connor* for defendants.

**Barney, J.** The effect of the following language used in a mortgage deed is the key to this controversy:

Mortgagors shall have the right to cut timber from the prem-

ises on and after July 1, 1960 provided that they are not in default under any terms or conditions hereof.

Acting under this provision, the mortgagors sold certain standing timber on the premises to the defendant corporation in May, 1962, by a quitclaim deed which limited the right to cut to two years. When a letter sent in early June, 1962, did not halt the timber operation, the plaintiffs, as mortgagees, brought this equitable action in September, 1962, to enjoin the defendant's cutting.

During the hearing, the chancellor admitted parol evidence to explain the construction put on the language quoted above by the mortgagors and mortgagees at the time the transaction took place. The defendant objected vigorously, and its opposition to that ruling and its consequences is the principal theme of its appeal.

■ The generalized justification for resort to parol evidence in such circumstances is easy to state. Where a written instrument contains demonstrable ambiguities, evidence may be received of acts and expressions of the parties indicative of the construction they understood between themselves should be placed on the language used. Otherwise, written instruments are enforced according to their express terms. *Randall* v. *Clifford*, 119 Vt. 216, 223, 122 A.2d 833. As that case suggests, at pages 224-5, misrendering of terms is corrected by particular proceedings for reformation, not during actions for enforcement. It also, at page 224, points out some of the policy bases for forbidding parol modification of plain written language in suit on the instrument. As between the parties, it avoids the problem of a subsequent change in intention by one or both of them. Further, third parties, later entering the transaction, have some assurance that they may rely on the express terms of the original agreement.

On the other hand, the presence of ambiguous language is itself a warning to third parties, and a problem which can only be resolved by resort to the stated purpose of the parties concurrent with the transaction. But the ease of stating the rule, admitting parol evidence to clear up ambiguous language, is overbalanced by the difficulty of determining when it applies.

In this case, the quoted term of the mortgage appears clear, explicit and unambiguous. It gives to the mortgagors personally the right to cut the timber on the property after a given date if they are not in default under the mortgage. Any enlargement or abridgement of that right comes about as a matter of interpretation, either deriving from the construction the law itself puts on the term in the circumstances, or

from the intention of the parties at the time, if such evidence is properly admissible.

The defendant takes the position, first, that the clause is clearly unambiguous and requires no interpretation through oral testimony. It then retreats from this position when it proposes to establish assignability of the right to cut timber from testimony introduced by it that Carl Page, at the time, gave the mortgagors the names of several lumber dealers to whom they could sell. Laying aside, for the moment, the right of the chancellor to accept or reject this testimony, which was challenged by other evidence, it should be stated that the defendant cannot have the benefit of two opposing positions as to this one clause. It is either ambiguous, or it is not. It is open to explanation and interpretation from contemporaneous conversations, or it is not. If it is so open, both sides are entitled to present such explanatory evidence.

If the clause in question is taken as unambiguous, the right to cut timber after July 1, although not otherwise restricted, has no language making it transferable or assignable. It is important to recognize that this is not a sale or conveyance of standing timber, such as was the case in *Deerfield Lumber Co.* v. *Lyman,* 89 Vt. 201, 210-11, 94 Atl. 837, or *Ross* v. *Hamilton,* 95 Vt. 234, 236, 113 Atl. 781. Our cases distinguish between agreements intended to transfer title to standing timber, like *Dutton* v. *Davis,* 103 Vt. 450, 452, 156 Atl. 531, and agreements merely giving rise to a right to cut. *Norton* v. *Green,* 94 Vt. 295, 298, 111 Atl. 458.

Such a right to cut is a personal right in the nature of a license, and is unassignable unless expressly made so. *McCastle* v. *Scanlon,* 337 Mich. 122, 59 NW2d 114, 121. See also 130 A.L.R. 1263; 54 C.J.S. Logs and Logging § 29e, p. 731. This means, of course, that any attempt on the part of the mortgagors to transfer or assign this right to cut must fail, and the quitclaim deed to the defendant, being unfounded, is of no ·force and effect. This is the very same consequence that the chancellor reached below by admitting explanatory testimony.

With both sides urging the conversations between the contracting parties in support of their own particular interpretations of the clause, the chancellor adopted the view that a latent ambiguity existed. He went on to hear their evidence, taking into account the situations of the mortgagors and mortgagees at the time agreement was reached, and also the ends sought to be achieved by the transaction.

The mortgage context is important. The critical phrase deals with the right to cut timber on the mortgaged premises. Mortgages

also deal with such rights by legal implication. There is a general duty on both mortgagees and mortgagors, in connection with possession of the premises, not to do anything to the property impairing its adequacy as security. 59 C.J.S. Mortgages §294, p. 368. Neither can legally commit waste. *Whiting* v. *Adams*, 66 Vt. 679, 687, 30 Atl. 32. This general doctrine was specifically held to apply to the cutting of timber in *Hastings* v. *Perry*, 20 Vt. 272, 278-80. Both mortgagor and mortgagee, however, are generally conceded to have implied authority to cut such timber as is reasonably needed on the premises for fuel, repairs or other related purposes as is justified by good husbandry. *Whiting* v. *Adams*, supra, 66 Vt. 679, 687; 36 Am. Jr. Mortgages §359, p. 870.

■ It is not necessary to be exhaustive. What has already been said sufficiently demonstrates the latent equivocal nature of the phrase involved. *Forslund* v. *Cookman*, 125 Vt. 112, 114, 211 A.2d 190, 192. Certainly it cannot be determined from that language whether the expressed cutting right was limited, on the one hand, to timber to be cut for use on the place, or, on the other hand, to the sale of standing timber without reservation; nor is it clear whether or not the right to cut was conditioned upon the application of any proceeds on the indebtedness. There was ambiguity, and the reception of parol evidence was not error. *Goodenough* v. *McGregor*, 107 Vt. 524, 528, 181 Atl. 287; *Aldrich* v. *Griffith*, 66 Vt. 390, 398, 29 Atl. 376.

The chancellor found from the evidence that the parties contemplated that the standing timber would be part of the security of the mortgage, and that its loss would impair that security. He found that the mortgagors had the right to cut timber for farm use, or for proceeds to be applied on the mortgage, if they were not in default. The defendant contends that there is no support for these findings.

The evidence favoring the plaintiffs reveals that the mortgaged premises were sold to the Hatches, the mortgagors, for $33,500. This price included livestock, stored hay, bulk tank, truck, machinery, tools and other personalty. The bare farm was worth about $18,000. The Hatches, as buyers, employed an attorney to draft the documents of sale. The closing was disrupted by a hospitalizing heart spell of Carl Page's, and the papers were prepared without his participation. The attorney was apparently not informed that there was substantial personal property involved, besides the real estate, for no chattel mortgage was prepared. The Hatches were to make a down payment of $13,500, and the balance, evidenced by a note for $20,000, was to be secured by the mortgage. At the time of closing the full down payment was not

available, so the Hatches paid $10,000, and gave a separate additional note for $3,500, to be paid on or before July 1, 1960. The real estate mortgage was the only security for everything, including this note.

The provision in that mortgage now before us was inserted by the attorney employed by the Hatches. The testimony of Warren Hatch suggested that he understood that he had complete freedom to dispose of the timber once he had paid up the $3,500 note, but he also conceded that Carl Page had told him he wanted timber proceeds to apply on the mortgage indebtedness. The testimony of Carl Page was that the timber was understood to be part of the security for the mortgage. The attorney involved testified that the clause was based on a notation from his conference about the transaction which said that the mortgagor was not to "take lumber or material off the place until July 1, 1960." No proceeds from the sale of the standing timber were applied on the mortgage, nor does the record show any tender of such payment for the benefit of the mortgagee in any manner.

■ From all the evidence, including the testimony noted, the chancellor concluded that the right to the timber given by the mortgage term was intended to be subject to the application of the proceeds to the indebtedness. With supporting evidence present, this Court will affirm his finding of fact. *Cross-Abbott* v. *Howard's Inc.,* 124 Vt. 439, 445, 207 A.2d 134. This result is strengthened by the rule construing a doubtful provision against the party responsible for drafting it. *Stratton* v. *Cartmell,* 114 Vt. 191, 194, 42 A.2d 419. Further, such a reading is consistent with the security nature of the transaction and the prohibitions against waste and destruction of the mortgage security which the law implies. *Hastings* v. *Perry,* supra, 20 Vt. 272, 280.

■ We are mindful that this suit is not one between the parties to the instrument involved. The law tends to protect the interests of innocent third parties who may be deceived by the appearances of a transaction. But the defendant here was on some notice as soon as it discovered that the premises were mortgaged, since that bound it to make inquiry of the plaintiff as to the status of the obligation. *Jeffers* v. *Pease,* 74 Vt. 215, 217, 52 Atl. 422.

■ The evidence and findings are undisputed that the defendant did do so, and was specifically warned that the plaintiffs claimed an interest in the standing timber. All of this it knew before it purchased the timber from the Hatches, yet it went ahead. It stands now in no better position with respect to the interpretation of the mortgage provision than the mortgagors. *Hastings* v. *Perry,* supra, 20 Vt. 272, 280.

In the circumstances, at least a tender of the timber purchase money to the plaintiffs was essential to give the Hatch quitclaim deed any worth at all. According to the facts, neither the Hatches nor the defendant took any such step to fulfill such a requirement of the mortgage, nor took any to protect themselves from its operation. Consequently, the chancellor rightly determined that, on this basis, the attempted conveyance was void and of no effect.

The chancellor went on to rule that this timber provision was a reservation, rather than an exception, to which he applied the rule of law that a reservation without words of inheritance is personal to the grantor. This is where the defendant abandoned its objection to the introduction of parol evidence, arguing that the conversations between mortgagor and mortgagee, at the time of closing, demonstrated that the right to cut timber was intended to be assignable. The inconsistency of this position has already been pointed out and needs no further comment. In any event, with the invalidity of the attempted sale already abundantly established, this issue becomes immaterial, and no error appears.

*Decree affirmed.*

**Shangraw, J.** Concurring in the result. I concur in the result on the basis that the timber cutting rights was a license personal to the mortgagors and not transferable to the defendant.

It is, however, my view that the language in the mortgage deed relating to such rights, and quoted in the opinion, is unambiguous, and that its interpretation through oral testimony was error.

The mere fact that parties have differed as to the meaning of the terms of a contract does not make it ambiguous. Otherwise, the mere assertion of ambiguity by a party would result in a ruling of ambiguity. This is not the law. It is the duty of the courts to construe contracts, not to make them for parties. *Troy* v. *American Fidelity Co.*, 120 Vt. 410, 418, and cases cited.

Contracts are to be construed according to the sense and meaning of the terms which the parties have used, and if they are plain and unambiguous, their terms are to be taken in their plain, ordinary and popular sense. *Abraham* v. *Insurance Company of North America*, 117 Vt. 75, 79, 84 A.2d 670, 29 A.L.R. 2d 783; *Johnson* v. *Hardware Mutual Casualty Co.*, 108 Vt. 269, 277, 187 A.788; *Troy* v. *American Fidelity Co.*, supra, p. 418.

Further, as stated in *In Re Robinson's Will*, 101 Vt. 464, 467, 144

Atl. 457, "It is the settled doctrine of our decisions that where the terms of a writing, whatever its character, are plain and unambiguous, there is no room for construction and it is to be given effect according to its language."

Moreover, having determined that the timber cutting rights were of a personal nature and not transferable by the mortgagors, it is of no consequence whether the mortgage provisions relating thereto are ambiguous or unambiguous.