**VERMONT ELECTRIC POWER COMPANY, INC., Plaintiff,**

v.

**The HARTFORD STEAM BOILER INSPECTION AND INSURANCE CO., Defendant,**

**Continental Insurance Co., Defendant.**

**No. 2:98–CV–356.**

United States District Court, D. Vermont.

Oct. 22, 1999.

Bruce Calvert Palmer, Downs, Rachlin & Martin, St. Johnsbury, VT, for Vermont Electric Power Company, Inc., plaintiff.

Daniel L Burchard, McCormick, Fitzpatrick, Kasper & Burchard, Burlington, VT, Ernest J. Mattei, Day, Berry & Howard, Hartford, CT, for The Hartford Steam Boiler Inspection and Insurance Co., defendant.

## OPINION AND ORDER

SESSIONS, District Judge.

This is a lawsuit brought by Plaintiff Vermont Electric and Power Company ("VELCO") against The Hartford Steam Boiler Inspection and Insurance Company ("Hartford") and Continental Insurance Company ("Continental") for breach of insurance contract. VELCO argues that the breach occurred when Defendants failed to reimburse VELCO for the cost of repair of three damaged transformers. Both Defendants moved for Summary Judgment. Plaintiff VELCO filed a cross-motion for partial Summary Judgment on liability. For the reasons that follow, Continental's motion for summary judgment is GRANTED, Hartford's motion for Summary Judgment is DENIED, and VELCO's cross-motion for Partial Summary Judgment on liability is DENIED.

### Factual Background

For purposes of these motions, the following facts are assumed to be true. VELCO uses a Highgate Converter Station which has three transformers of identical design. Two of these transformers operate together and one serves as a back up. The transformers were installed in August of 1985. The first transformer stopped working on August 15, 1996, due to a short circuit problem caused by overheating. In April 1997, after the return of the first transformer, VELCO sent the second transformer for inspection and repair, and it was found to have identical problems to the first. The same was done with the third (spare) transformer in October of 1997. These problems were found to have been progressively caused by continuous damage, which were allegedly the consequence of defective design.

VELCO was covered by Allendale Mutual Insurance Company ("Allendale") under an all-risk policy when the losses were discovered in 1996 and 1997. Although the total loss suffered was $3,367,371, VELCO settled with Allendale for $2,384,769. VELCO seeks to recover the difference from previous carriers Hartford and Continental. Hartford insured VELCO from August 1990 through October 1993, and Continental supplied coverage from August 1988 through August 1990.

VELCO's asserts that its experts have concluded that the damage began at the time of installation in 1985 and was progressive and continuous throughout the periods of coverage by Hartford and Continental. Hartford and Continental refute this assertion, and, if their Summary Judgment motions are denied, seek additional discovery to pursue questions of cause and timing of the damage.

### Discussion

Summary Judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c); *Alexander & Alexander Services, Inc. v. These Certain Underwriters at Lloyd's, London, England,* 136 F.3d 82, 86 (2d Cir.1998) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The movant bears the burden of showing that no genuine issue of material fact exists. *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223 (2d. Cir.1994) (citing *Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir.1975)). All ambiguities must be resolved and all inferences from the facts drawn in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In sum, "[t]he court must draw all reasonable inference in favor of the non-moving party and only grant summary judgment for the moving party if no reasonable trier of fact could find in favor of the non-moving party." *Vermont Gas Systems, Inc. v. United States Fid. & Guar. Co.,* 805 F.Supp. 227, 231 (D.Vt.1992) *citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Although the complaint has not specified the grounds for jurisdiction, the Court assumes that jurisdiction of this matter is based on diversity, 28 U.S.C. § 1332(a)(1). The Court applies Vermont law to the substantive issues. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

### I. *Continental's Motion for Summary Judgment*

Continental contends that it is immune from liability on three separate grounds. First, they claim that during the time of coverage, VELCO did not suffer a "loss." Second, they claim that Plaintiffs failed to bring suit within the two year limitation period. Third, Continental argues that even if the loss had occurred during the policy period, the type of loss Plaintiffs allege was specifically excluded from coverage in the policy language. In light of exclusionary language of the policy, the Court need not address the first two issues.

"The cardinal principle for the construction and interpretation of insurance contracts—as with all contracts—is that the intentions of the parties should control." *Newmont Mines Ltd. and Esso Resources Canada Ltd. v. Hanover Ins. Co.,* 784 F.2d 127, 135 (2d Cir.1986). However, ambiguous policy language often makes this a difficult task. The determination of whether language is ambiguous is a question of law resolved "by reference to the contract alone." *See O'Neil v. Retirement Plan for Salaried Employees of RKO Gen., Inc.,* 37 F.3d 55, 59 (2d Cir. 1994), citing *Burger King Corp. v. Horn & Hardart Co.,* 893 F.2d 525, 527 (2d Cir. 1990). Language is ambiguous when "it is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context

of the entire integrated agreement.'" *O'Neil* at 59, citing *Care Travel Co. v. Pan Am. World Airways,* 944 F.2d 983, 988 (2d Cir.1991). When it is impossible to determine the exact meaning of an ambiguous provision, the Court should employ the rule of *contra proferentum,* which construes the ambiguity against the drafter of the insurance policy. "It is a general rule of construction in Vermont that a doubtful provision in a written instrument is construed against the party responsible for drafting it." *Trustees of Net Realty Holding Trust v. AVCO Fin. Servs. of Barre, Inc.,* 147 Vt. 472, 520 A.2d 981, 983 (1986), citing *Page v. Lyle H. Hall, Inc.,* 125 Vt. 275, 214 A.2d 459, 463 (1965).

■ The Continental policy contains the following language in the section on exclusions from coverage:

4. This policy does not insure against loss caused by any of the following. However, any ensuing loss not excluded or excepted in this policy is covered.

C. Faulty, inadequate, or defective:

(2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction ... of part of all of any property, on or off the described premises.

Plaintiffs characterize the damage to the transformers as an "ensuing loss." They argue that the ensuing loss was the "consequence[ ] of the defective design and is the remainder of the repair and replacement costs that VELCO sustained" and thus must be reimbursed under the policy. *Plaintiff's Reply to Continental's Opposition to Partial Summary Judgment on Liability* at 7, (No. 98–cv–356). The loss itself, however, was not the design defect, but the damage to the transformers; the defective design was the cause. An ensuing loss would be one which occurred subsequent to the overheating of the transformers, for example, fire destruction of the building which housed the transformers.

Furthermore, to characterize the design defect as the loss from which the damage to the transformers ensued simply defies logic. If the transformers had never malfunctioned and the design defect had gone unnoticed indefinitely, VELCO would have suffered no loss. Therefore, the design defect alone cannot qualify as the initial loss from which the damage from the transformers ensued. If the damage to the transformers is considered an ensuing loss, then the exception swallows the exclusion. "Where a property insurance policy contains an exclusion with an exception for ensuing loss, courts have sought to assure that the exception does not supersede the exclusion by disallowing coverage for ensuing loss directly related to the original excluded risk. *See Aetna Cas. & Sur. Co. v. Yates,* 344 F.2d 939 (5th Cir.1965); *80 Broad St. Co. v. United States Fire Ins. Co.,* 88 Misc.2d 706, 707, 389 N.Y.S.2d 214 (N.Y.Sup.Ct.1975), affd. 54 A.D.2d 888, 390 N.Y.S.2d 768 (N.Y.App.Div.1976); *Acme Galvanizing Co. v. Fireman's Fund Ins. Co.,* 221 Cal.App.3d 170, 270 Cal.Rptr. 405 (Cal.Ct.App.1990)." *Narob Dev. Corp. v. Insurance Co. of N. Am.,* 219 A.D.2d 454, 454, 631 N.Y.S.2d 155 (N.Y.App.Div. 1995).

This case presents precisely the type of situation in which the loss is directly related to the original excluded risk. Characterizing the damage to the transformers as an ensuing loss would supersede Continental's exception for losses caused by design defect. As Continental's policy unambiguously excludes coverage for such losses, Continental's motion for summary judgment is granted.

II. *Hartford's Arguments for Summary Judgment*

In moving for Summary Judgment, Hartford makes two separate claims. First, they argue that there was no legally cognizable loss during the period Hartford insured VELCO. Second, they claim that Summary Judgment is required due to VELCO's failure to commence the action

within the twenty four month limitation period in the Hartford policy.

In arguing that no legally cognizable loss occurred during the period of coverage, Hartford relies on the "manifestation" theory of coverage trigger. "The 'Manifestation Theory' holds that coverage is triggered at the time the personal injury or property damage becomes known to the victim or property owner." 7 Lee R. Russ and Thomas F. Segalla, *Couch on Insurance*, § 102:22 (3d ed.1997). Allendale was the only insurer on the risk at the time of the manifestation of damage to the transformers. Thus, under this theory, the responsibility for covering VELCO's losses falls on Allendale alone.

In support of this application, Hartford relies on *Prudential–LMI Commercial Ins. v. Superior Court,* 51 Cal.3d 674, 274 Cal.Rptr. 387, 798 P.2d 1230 (1990), which holds that the manifestation trigger applies in all first-party progressive damage property insurance cases. However, application of this California Supreme Court case is not best suited to the present case.

In California, and many other states, insurers are required to use the language contained in the New York Standard Fire Policy of 1943 in their policies. Due to standardized language and definitions, all parties in these states are on notice about the meanings of contract terms. Therefore, adopting a manifestation trigger in these states reduces both uncertainty and the unwieldy nature of progressive loss cases without undercutting the insured's reasonable expectations about coverage. See Chandra Lantz, Note, *Triggering Coverage of Progressive Property Loss: Preserving the Distinctions Between First– and Third–Party Insurance Policies,* 35 Wm. & Mary L.Rev. 1801 (1994).

■ This argument fares well in those states where insurance policy language is standardized—even more so where specific language is legislatively mandated and closely tracks the language of the New York Standard Fire Policy of 1943. Ver-mont, however, is not one of these states, as evinced by the differing language of Continental and Hartford's policies. "[B]ecause the policy defines the indemnity relationship between the insured and the insurer, it should and must be the central focus of a court's analysis in any coverage. Consequently, the terminology utilized in insurance policies is pivotal in continuous loss litigation and courts must be cautious when applying precedent based on different contractual language." *Id.* at 1809. Therefore, this Court must look to the policy language, rather than to any specific theory of coverage trigger, to determine whether Hartford was "on the risk" at the time of the damage to the transformers.

■ In reviewing Hartford's policy, several provisions could be read to narrow the coverage for VELCO's transformers. However, in order for these provisions to protect Hartford, each defense should have been enumerated in the correspondence denying coverage to VELCO. When an insurer is or should have been aware of defenses and fails to disclose them prior to litigation, they are waived as a matter of Vermont law. *Village of Morrisville Water and Light Dep't v. United States Fid. & Guar. Co.,* 775 F.Supp. 718, 724 (D.Vt. 1991). When a particular defense is raised, it is assumed that all others are waived. *Cummings v. Connecticut Gen. Life Ins. Co.,* 102 Vt. 351, 148 A. 484, 486– 87 (1930) (internal citations omitted).

■ Hartford stated in a letter dated October 30, 1997, that "a full reservation of rights will remain in effect due to the delayed notification." A second letter, dated November 24, 1997, stated that the initial letter remained in effect, and that "design defects are specifically excluded in the policy." The third letter, dated March 19, 1998, stated that the damage to the transformers did not occur when Hartford was on the risk and formally denied coverage with the language "I will be closing my files without payment." This third letter did not make mention of any other

grounds for denial of the claim, nor did it specifically incorporate the contents of the first two letters, as the second letter had incorporated the contents of the first. Thus, Hartford failed to preserve all defenses other than the "occurrence" or "trigger of coverage" defense.

■■■■ Hartford additionally argues that VELCO's claims are barred by VELCO's failure to notify Hartford within the twenty-four month period specified in the policy. If the deterioration did occur between 1990 and 1993, VELCO did not notify Hartford until well after twenty-four months following the actual occurrence of deterioration. Nonetheless, courts have held that an insured's failure to give timely notice to its insurer may be excused by proof that the insured lacked knowledge of the occurrence. "The rule of this jurisdiction that policies of insurance are to be construed against the insurer in favor of the insured is found in *Valente v. Commercial Ins. Co.*, 126 Vt. 455, 459, 236 A.2d 241, 243, where this Court held: 'It is a fundamental rule that a policy of insurance must be construed liberally in respect to the person insured and strictly with respect to the insurer.' In 44 Am.Jur.2d, *Insurance*, § 1482, the sufficiency of compliance with the requirement of giving notice of an accident, is stated in general as follows: 'Generally speaking, provisions for the giving of notice of loss or the furnishing of proofs of loss to an insurer will be liberally construed in favor of the insured, and a substantial compliance therewith, as distinguished from a strict compliance, will suffice.'" *Stonewall Ins. Co. v. Moorby* 130 Vt. 562, 566–67, 298 A.2d 826, (Vt.1972). *Also see Commercial Union Ins. Co. v. International Flavors & Fragrances, Inc.*, 822 F.2d 267, 271 (2d Cir.1987) (analyzing N.Y. law). The insured bears the burden of proving that the delay in notifying an insurance company was excusable. *U.S. Fidelity & Guar. Co. v. Gable*, 125 Vt. 519, 220 A.2d 165 (Vt. 1966); *Olin Corp. v. Insurance Co. of N. Am.*, 966 F.2d 718, 724 (2d Cir.1992).

Here, the insured has met its burden by providing ample evidence that it had no knowledge of the deterioration of the transformers until well after the twenty-four month period had expired; the manifestation of the damage to the transformers did not become evident until after the period had expired. Hartford has offered no evidence to the contrary. VELCO did notify Hartford of the damage to the transformers within twenty-four months of learning about the damage. Thus, Plaintiff is not time barred from recovering losses from Hartford.

As this court finds (1) that Hartford declines to adopt the manifestation theory, (2) that the claims are not time barred, and (3) all other defenses were waived by Hartford, the suitability of granting Summary Judgment rests on whether there are any remaining triable issues of fact. Whether the deterioration occurred during the period of indemnification of VELCO by Hartford is one such fact; thus, Hartford's motion for Summary Judgement is denied.

III. *VELCO's Arguments for Partial Summary Judgment on Liability*

■■■■ VELCO argues that it is entitled to Judgment as a matter of law on the basis of three separate claims against both Hartford and Continental, and under an additional reasoning against Hartford. Since the motion for Summary Judgment has been resolved in favor of Continental, the following discussion need only address the arguments as they relate to Hartford. Hartford contends that Summary Judgment on liability is inappropriate as factual issues exist as to whether damage occurred during the period of HSB's policies. Hartford disputes Plaintiff's assertion that the damage to the transformers occurred during Hartford's coverage of VELCO. Arguing that Summary Judgment in favor of VELCO is premature, Hartford requests additional time for discovery.

■■■■ Hartford seeks additional time to conduct discovery pursuant to Fed.

R.Civ.P. 56(f). The Court has discretion to postpone ruling on a Summary Judgment motion if a party "needs additional discovery to explore 'facts essential to justify the party's opposition.' Rule 56(f)." *Crawford-El v. Britton*, 523 U.S. 574, 118 S.Ct. 1584, 1597, 140 L.Ed.2d 759 (1998). Rule 56(f) provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for Judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

VELCO cites this Court's ruling in *Mercier v. Peterson*, 927 F.Supp. 764, (D.Vt. 1996), to argue that Hartford has not met the standard for receiving additional time to conduct discovery. As this Court discussed in *Mercier*, a "party seeking additional time for discovery under Rule 56(f) must submit an affidavit satisfying a four part test. *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir.1994); *Hudson River Sloop Clearwater, Inc. v. Dept. of Navy*, 891 F.2d 414, 422 (2d Cir. 1989); *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 926 (2d Cir.1985). The affidavit must include: 1) the nature of the uncompleted discovery, i.e., what facts are sought and how they are to be obtained; 2) how those facts are reasonably expected to create a genuine issue of material fact; 3) what efforts have been made to obtain those facts thus far; and 4) why those efforts were unsuccessful. *Burlington Coat*, 769 F.2d at 926. Such specificity in the affidavit is required to distinguish sincere needs for more discovery from 'fishing expeditions.' See *Capital Imaging Assoc. v. Mohawk Valley Med. Assoc.*, Inc., 725 F.Supp. 669, 680 (N.D.N.Y.1989), *aff'd on other grounds*, 996 F.2d 537 (2d Cir.), *cert. denied*, 510 U.S. 947, 114 S.Ct. 388, 126 L.Ed.2d 337 (1993)." *Mercier* at 767.

In *Mercier*, Plaintiff's affidavit was found to fail this test. The *Mercier* affidavit stated that " '[w]ritten discovery has been exchanged. Plaintiff is attempting to schedule the deposition of Defendant Lambrou. This deposition will address some of the outstanding factual questions.' " The Court found that seeking answers to "outstanding factual questions" to be "blatantly insufficient" of the specificity required in Rule 56(f) affidavits. *Id.*

The present case, however, is distinguishable. The affidavit of Mr. Reynolds' states that Hartford seeks to prove "that damage did not occur to the transformers at issue during the period of HSB's policies," and that the documentation offered by VELCO's consultants does not establish deterioration during the time of Hartford's coverage. *Hartford's Opposition to VELCO's Motion to For Partial Summary Judgment,* Exhibit 2 at 3. Hartford seeks to employ their own experts to address the precise timing of the damage of the transformers, which falls at the core determining liability. *Id.* Thus, the affidavit amounts to more than a "vague and unsubstantiated reference to what [Hartford] hopes to discover," and meets the first two parts of the *Burlington Coat* test. *Mercier v. Peterson*, 927 F.Supp. at 767 (D.Vt.1996).

In addressing parts three and four of the *Burlington Coat* test, Hartford freely admits that they have conducted no discovery to date. VELCO argues that Hartford chose to forgo discovery during the time provided in the Stipulated Discovery Schedule/Order, and Hartford should not be allowed to rewrite the schedule now. Hartford, however, argues that in order to save court and party resources, significant discovery was postponed until certain threshold issues were resolved. The apparent confusion over whether there was agreement to delay extensive discovery warrants that the Court stay its hand on matters that require further investigation by the non-moving party, in accordance with Rule 56(f).

Finally, VELCO takes issue with the admissibility of the emails offered in

support of Mr. Reynold's affidavit. The emails are intra-company correspondence which analyzes VELCO's expert reports on how the damage to the transformers occurred. In particular, they assert that the expert reports are not conclusive regarding the timing of the damage. VELCO argues that these emails are inadmissible on two separate grounds; they claim that they are hearsay, and that they fail to comport with the requirements for introduction of expert testimony. Both of VELCO's arguments fail. First, the emails are clearly admissions of a party, and therefore admissible as non-hearsay. Second, they do not implicate the Federal Rules addressing admission of expert testimony, because they are not offered as expert testimony. Nothing in the Federal Rules of Evidence prohibits a party from serving as an expert witness, and the content of the emails do address technical matters regarding the manner in which the damage to the transformers evolved. However, the emails are not relied upon for their expert opinion on the damage to the transformers, but rather as support for the proposition that there are unanswered questions regarding timing of the deterioration which require further investigation. As the Court is persuaded that a genuine issue of material fact for trial exists, VELCO's motion for partial Summary Judgment on liability is denied.

### CONCLUSION

For the reasons stated above, Continental's motion for Summary Judgment (paper 28) is hereby GRANTED; Hartford's motion for Summary Judgment (paper 33) is DENIED. VELCO's motion for partial Summary Judgment on liability (paper 42) is DENIED WITHOUT PREJUDICE. The parties should file revised discovery schedules within 30 days. VELCO may file its motion upon completion of discovery.